Eldridge v. Eldridge.

SAMUEL ELDRIDGE et al., executors,

*v.*

EMELINE ELDRIDGE et al.

A testator directed his executors to secure at interest one-eleventh of his estate, and to pay the interest thereon yearly to his son Robert during his natural life, and, at his decease, to pay the principal sum to his lawful heirs, share and share alike.—*Held*, that Robert took a life interest in the fund, and his children a vested remainder.

Bill for construction of will. On final hearing on bill and answers.

*Mr. E. L. Campbell,* for the executors.

*Mr. W. M. Lanning,* for the children of Robert Eldridge, Sr.

THE CHANCELLOR.

Wilson Eldridge, late of Mercer county, died in September, 1872. By his will, after directing payment of his debts and funeral expenses, he gave to his wife, for life, the use and occupation of his homestead farm (except eight acres devised to his son Alexander), and of all his household goods and furniture,

together with his farming utensils, horses, cows, sheep, hogs, hay, grain, and other articles on the farm necessary for her to have and use for the purpose of farming, during her life. He then gave the eight acres to Alexander, and gave legacies to some of his grandchildren. He then directed his executors to sell certain other land of his, and directed his executors, after the decease of his wife, to sell the homestead farm (except the eight acres), and the stock and farming utensils that might remain thereon, and, after payment of his debts, funeral expenses, legacies remaining unpaid and the expense of settling his estate, to divide the balance into eleven shares and pay one to each of eight of his children, viz., Alexander, Adeline, Mary, John, Lydia, Wilson, Samuel and Elizabeth, and another, less $300, to his son George, his heirs or assigns, and to divide the $300 into ten shares, and pay one to each of the above-named eight of his children, their respective heirs or assigns. He then directed them to secure at interest one-eleventh of the balance of his estate, as above mentioned, together with one-tenth of the $300, and to pay the interest thereof, yearly, to his son William for life, and, at William's decease, to pay the principal to his lawful heirs, share and share alike. He then made the following provision :

"I also further direct my executors to secure at interest one-eleventh of my estate, as above named, together with the one-tenth of said $300, and that they pay the interest thereof, yearly, to my son, Robert Eldridge, during his natural life; and, at the decease of my son, Robert Eldridge, they pay the principal sum to his lawful heirs, share and share alike."

The testator's widow died in 1872. Robert Eldridge died August 27th, 1885, leaving a widow and six children, all born before the testator's death. He had had another son, Robert Eldridge, Jr., who died October 7th, 1872, after the death of the testator and before the death of the testator's widow, leaving a widow and an infant child named Robert Oliver Eldridge, who died January 26th, 1875, in the fourth year of his age. The child's mother survived him, and is a defendant in this suit.

The following claims are made to the principal of the fund, the interest whereof was given to the testator's son Robert for life: his widow, Emeline Eldridge, claims a share thereof as one of his next of kin ; Hannah Wood, the widow of his deceased son, Robert Eldridge, Jr., claims one-seventh of the fund as the next of kin of her deceased child, Robert Oliver Eldridge, and the six surviving children of Robert Eldridge, Sr., claim that they are themselves entitled to the whole of the fund. The executors have come into this court for a construction of the clause above quoted.

By the term " lawful heirs," in the clause under consideration, the testator meant children. He gives, not the fund, but the interest thereof merely, to his son Robert for life, and then provides that at the decease of Robert the principal sum be paid to Robert's " lawful heirs, share and share alike." The fact that the division among those who are described as Robert's lawful heirs is to be an equal one, is some evidence that the testator did not mean, by the term " lawful heirs," next of kin. The use of the qualifying term " lawful " is also somewhat indicative of the same thing. The cases in which such language has been interpreted to mean children are numerous. In *Bowers* v. *Porter, 4 Pick. 198,* the testator devised to his daughter the improvement of a farm—the premises to be equally divided between all her legal heirs at her decease. It was held that she took a life estate only, and that her children living at the testator's death took a vested remainder in fee. In *Davis* v. *Davis, 12 Stew. Eq. 13,* the words " lawful heirs " were construed to mean legitimate children. The word " heirs " is used in the clause under consideration as a word of purchase. Under the will, Robert took a life interest in the fund and his children a vested remainder. That remainder vested at the death of the testator. Though the gift is found only in the direction to pay, yet there being a prior gift for life, and the direction being to pay on the decease of the legatee for life, the gift in remainder vested at once on the death of the testator ; the contest of the will showing no different intention. *Theob. Wills. 275 ; 1 Rop. Leg. 589 ; Bowers* v. *Porter, ubi supra.* The case differs es-

sentially from *Van Tilburgh* v. *Hollinshead, 1 McCart. 32,* and the cases of that class, where the remainder is given, at the death of the legatee for life, to his surviving children, or children then living &c. In such cases the remainder is contingent, because the question as to who are to take depends upon the contingency of survivorship &c. Robert Eldridge, Jr., at his death, was entitled to one-seventh of the remainder in the $300, and it is now payable to his personal representative. The widow of Robert Eldridge, Sr., has no interest in the fund.