JOHN R. EMERY, FREDERIC W. STEVENS, EUGENE STEVENSON, LINDLEY M. GARRISON, EDMUND B. LEAMING, JAMES E. HOWELL AND EDWIN R. WALKER, VICE-CHANCELLORS.

---

In the matter of the application of CARRIE SMISSON for sale of lands limited over.

[Decided January 30th, 1912.]

1. In a will postponing disposition of testator's principal estate until after the death of his wife and his three children, there were clauses giving to the wife one-third of the income during her life, and distributing the remainder of the income to the children in specified shares. Then followed these clauses: "Item. Upon the death of my wife I do order that the one-third of the income hereby bequeathed to her shall be distributed among my surviving three children." "Upon the death of any of my three

233

children, I do order the portion bequeathed to him or her to be distributed among his or her heirs."—*Held*, (*a*) that the second of the quoted clauses, as well as the first, refers to income only, and was not intended to make disposition of any portion of the principal estate; (*b*) that the word "heirs" is used as a substitutionary term, and when taken in connection with the context shows a testamentary intent that each installment of income when it accrues (from and after the death of any of the three children and until the death of the last survivor) shall be distributed among those who at the time it accrues are appropriately to be described as "his or her heirs;" (*c*) that where a deceased child of the testator leaves issue living at the time the income accrues, such issue are "his or her heirs" within the meaning of the clause; (*d*) that the word "heirs," as here used, included a grandchild of a deceased child of the testator.

2. The rule against perpetuities that obtains in this state is the same as that adopted by the English courts; and under it any limitation that does not postpone the vesting of the estate longer than the duration of a life, or any number of lives, in being at the death of the testator (and twenty-one years thereafter), is valid.

3. Where the vesting of the fee is not postponed beyond the duration of specified lives in being at the death of the testator, any limitations of the life estates that may be made to take effect in the meantime are not within the rule against perpetuities, because they cannot by any possibility postpone a vesting of the fee beyond a period permitted by the rule.

---

On petition and amended petition of Carrie Smisson, individually, and as executrix of Lillian Smisson Schaab, deceased, and Georgina Westendorf, for payment to them of interest on funds in court.

*Miss Mary Philbrook,* for the petitioners.

*Messrs. Weller & Lichtenstein,* for the guardian *ad litem* of the respondent John Jacob Schaab, an infant.

PITNEY, CHANCELLOR.

The present controversy relates to the disposition of the income accruing upon thirteen-ninetieths of a certain fund that remains in court, being the proceeds of a sale of lands made under an order of this court pursuant to the "Act to authorize the sale of land limited over," &c., enacted in 1857, and the supplement of 1868. *Rev. 1877 pp. 1052, 1054 pl. 41, 51; Gen.*

*Stat. pp. 2992, 2994 pl. 46, 50; N. J. Comp. Stat. pp. 4688, 4691 pl. 42, 50.*

The lands in question were formerly owned by John J. Smisson, who died in the year 1877, leaving a widow, Jane, and three children, viz., Sarah, James and John, and leaving a will which contained the following provisions respecting the lands in question and other lands of which he died seized:

"Item. It is my will and I do order that my wife, Jane Smisson, shall be permitted to occupy the premises whereon I now reside, free of rent as long as she shall desire so to do, and while she continues to occupy the said property, I do order my executor to pay to her out of my estate the sum of $400 per annum, to be used by her for keeping the place in order.

"Item. I do give and bequeath unto my said wife the income of one-third of my estate during the term of her natural life, and the remainder of the income of my estate I do order to be distributed as follows:

"One-fifth thereof shall be paid to my son John Smisson. Two-fifths thereof shall be paid to my son James Smisson, and two-fifths thereof shall be paid to my daughter Sarah Jane Turner. and in addition thereto my said son James and daughter Sarah Jane shall be permitted to occupy the premises where they now reside upon Washington street, in Hoboken, free of rent so long as they desire. It being expressly understood, however, that none of my children are to draw any income from my estate until the mortgage upon my property in Bloomfield street, Hoboken, has been paid and satisfied by my executor; which shall be done out of two-thirds of income of my estate.

"Item. Upon the death of my wife I do order that the one-third of the income hereby bequeathed to her shall be distributed among my surviving three children.

"Upon the death of any of my three children I do order the portion bequeathed herein to him or her to be distributed among his or her heirs.

"Item. Upon the death of my wife and three children, above named, I do order my executor to sell and dispose of all of my real and personal estate at private or public sale, as he shall deem most advisable, and distribute the proceeds of such sale among the children of my said three children, equally share and share alike."

Jane Smisson, the widow, died in the year 1886. Sarah Jane Turner, the daughter, died in 1881, without issue. John Smisson died in 1897, leaving three children, viz., Carrie Smisson, Lillian Smisson Schaab, wife of Jacob Schaab, and Georgina Smisson Westendorf, wife of Charles Westendorf. James Smisson, the remaining child of John J., is still living.

In 1904 a petition for the sale of the lands under the "Act to authorize the sale of land limited over to infants, or in contingency," &c. (above cited), was presented by Carrie Smisson, setting up the facts just mentioned, and averring James Smisson to be entitled to the income of seventeen-thirtieths of said lands during his life, and the petitioner, Carrie Smisson, and her sisters, Lillian Smisson Schaab and Georgina Smisson Westendorf, to be entitled together to thirteen-thirtieths of the income during the life of James, and entitled to the whole of the lands at the death of James without issue.

The master to whom the matter was referred made a report (filed June 9th, 1905) showing that the lands in question were "held in the manner and under the limitations mentioned in and by said last will and testament, and that upon the death of the said James Smisson, surviving child of the said John J. Smisson, deceased, the children of John Smisson, deceased, and the children of the said James Smisson, if any there be, will be entitled to the proceeds arising from the sale of said lands as set forth in and by said will." He reported that it was unadvisable to sell the Bloomfield street or the Washington street property mentioned in the will, but reported in favor of the sale of another tract mentioned in the petition, known as the Paterson street property in West Hoboken.

In due course the then chancellor made an order for the sale of this latter property, and it was sold, and the proceeds were paid into court. It is this fund of which the income is now in question.

It should be added that it appears that the mortgage on the Bloomfield street property has been long since satisfied, as required by the will.

Some time after the proceeds of sale were paid into court, application was made to me for an order that the interest moneys thereon be paid to Carrie Smisson, Lillian Schaab and Georgina Westendorf, and that the principal sum or any share thereof which had become vested should be paid to them. I thereupon made an order of reference to a special master (dated May 6th, 1909) confining the inquiry, however, to the question of the disposition of the income; Chancellor Magie having held, on a

former occasion, that no part of the principal had become vested. A report was made by the special master (filed February 16th, 1910) to the effect that the parties were not presently entitled to receive any portion of the principal, and that the whole of the interest arising from the proceeds of sale should be paid to the said James Smisson and the said Carrie, Georgina and Lillian in the proportions of seventeen-thirtieths to James Smisson, and thirteen-ninetieths to each of the others. Upon the coming in of this report, and under date March 10th, 1910, an order was made which provided for the payment of the interest moneys already accrued, and that should thereafter accrue during the lifetime of James Smisson, in the proportions just mentioned.

This order contained the following additional clauses:

"'That in the case of the death of said Carrie Smisson, Lillian Schaab or Georgina Westendorf, during the lifetime of said James Smisson, the share of the interest to which either of them is entitled shall be paid to the heirs, devisees, legatees or next of kin of said deceased as this court shall direct; and upon the death of said James Smisson, the full amount of the said proceeds of sale shall be paid to the said Carrie Smisson, Lillian Schaab and Georgina Westendorf, equally share and share alike, or in case of the death of either of them as this court shall then direct."

So much of this order as provided for the disposition of the principal upon the death of James Smisson was inadvertently included therein, and upon my attention being called to it, I made an order striking out this clause.

Subsequently, and on September 3d, 1910, Lillian Smisson Schaab died, leaving her surviving her husband, Jacob Schaab, and her only child, John Jacob Schaab, an infant of tender years, and leaving a will by which all her property was given and devised to this child, and of which her sister Carrie Smisson was appointed executrix.

After the death of Mrs. Schaab, a petition and amended petition were filed by Carrie Smisson, individually, and as executrix of Mrs. Schaab's will, and by Georgina Westendorf, praying for a determination of the rights of the several parties in that share of the income which would have been payable to Lillian Smisson Schaab had she survived. It is this amended petition that raises the question now to be decided.

In this application James Smisson is not interested, for it does not affect his right to seventeen-thirtieths of the income during his lifetime. The only parties interested in the controversy (other than the petitioners) are Jacob Schaab and his child, John Jacob Schaab. For the father appearance has been entered, but no answer was filed nor argument made in his behalf. For the infant a guardian *ad litem* has been appointed, and counsel has submitted argument in support of his claims.

The question turns upon the proper construction of the provisions of the will of John J. Smisson above quoted, and especially the following clauses:

"Item. Upon the death of my wife I do order that the one-third of the income hereby bequeathed to her shall be distributed among my surviving three children.

"Upon the death of any of my three children I do order the portion bequeathed to him or her to be distributed among his or her heirs."

In my opinion, the second of these clauses (as well as the first) refers to the income only, and was not intended to make disposition of any portion of the principal estate in the contingency mentioned. The disposition of the principal was postponed by the next item until after the death of the wife and all three children of the testator, in which event the executor was ordered to sell and dispose of all the estate of the testator "and distribute the proceeds of such sale among the children of my said three children equally, share and share alike." Reading the will as a whole, it seems to me to clearly manifest the intent of the testator to keep his entire principal estate intact so long as his wife or any of his children should be living. In the meantime the income thereof was disposed of, and the income only.

The ultimate vesting of the beneficial estate is thus postponed pending the lives of four persons in being at the death of the testator; and of these four James Smisson is now the sole survivor.

By whom, under the terms of this peculiar will, the legal fee of the lands is held during the period of the lives in question, is a question of some difficulty. It has, as I think, no bearing upon the present question, unless Jacob Schaab should claim (but he does not claim) the right to succeed as tenant by the curtesy to the interest of his deceased wife.

I am told that in an ejectment suit brought some years ago by the then living children of the testator against the administrator *cum testamento annexo* of his will, it was held by Mr. Justice Dixon at the Hudson circuit that the children took the fee. But I have no report of the case, which, as I am told, was decided upon an agreed statement of facts, and without any opinion in writing. Except for this decision I should be inclined to think, reading the whole of the will together, that it imposed a trust by implication upon the executors which would carry with it the fee of the land as necessary to the execution of the trust. See *Lindley* v. *O'Reilly, 50 N. J. Law (21 Vr.) 636.* There are, of course, many cases where a gift of the income of an estate, in the absence of indications of a contrary intent, amounts by implication to a devise of the fee. *Diament* v. *Lore, 31 N. J. Law (2 Vr.) 220.* But I do not think that rule can fairly be applied to the complicated and shifting provisions respecting income in the present case.

Moreover, in any view the estate of Lillian Smisson Schaab was in the nature of a life estate only, and her husband cannot succeed her as tenant by the curtesy.

For other present purposes the question—who took the legal estate in the lands during the lifetime of James Smisson—is of no consequence, for the sale made under the order of this court divested the legal estate and conveyed it to the purchaser, leaving the proceeds of sale to stand in lieu of the lands and subject to the terms of the will; and the legal title to those proceeds is vested in this court by section 5 of the statute. *Gen. Stat. p. 2994.*

It makes no difference whether under the will of the testator the land itself was limited over, or whether the fee was vested and only the proceeds thereof limited over. In the former case, the authority of the court to sell the land was derived from section 1 of the act of 1857 (*Gen. Stat. p. 2992*); in the latter case it was derived from the supplement of 1868. *P. L. 1868 p. 792; Gen. Stat. p. 2995 pl. 56.*

We, at present, have to deal only with the beneficial or equitable interest in the income upon the proceeds of sale, and its dis-

position must depend upon the intent of the testator as expressed in his will, rather than upon technical questions respecting the legal estate in the land.

Nor need we spend time upon the question whether the principal money is now to be treated in equity as real estate or as personal property. If we were dealing with a succession on intestacy that question would become important. In such cases, it is held that a conversion of land into money by a sale under the act for the sale of lands limited over does not in equity convert the proceeds into personal property. *Dowe's Case, 68 N. J. Eq. (2 Robb.) 11.*

The clause of the will that is now before me for construction was intended to apply to income derived from both real and personal property, and I have to deal only with the question of the intent of the testator respecting the disposition of that income as manifested by the language that he used.

Recurring, then, to the clause in question, and remembering that it applies to income only pending the life of James Smisson, the language is:

"Upon the death of any of my three children I do order the portion bequeathed herein to him or her to be distributed among his or her heirs."

The nature of the subject-matter prevents us from placing a strictly literal interpretation upon the first three words—"upon the death." If the thing to be distributed were the principal of the estate, or any single sum that was to be divided once for all, the three words quoted would be referable to a single point of time, and the scheme of distribution would necessarily be ascertained with reference to that time.

But what is to be distributed is *income to accrue in installments at intervals during a period of uncertain duration;* and it seems to me we must understand the words "upon the death of any of my three children" as meaning "from and after the death," &c. The same meaning is to be attributed to the same words where they occur in the clause immediately preceding— "upon the death of my wife," &c.

Next we come to the clause—"to be distributed among his or her heirs." The word "heirs" is used as a substitutionary term, and, when taken in connection with the context, it seems to me to show that each recurring installment of income when it accrues (from and after the death of any of the three children of the testator) shall be distributed among those who at the time it accrues are appropriately to be described as "his or her heirs." And, of course, where the deceased child of the testator leaves issue living at the time the income accrues, such issue are "his or her heirs" within the meaning of the clause.

Thus, upon the death of John Smisson (one of the three children of the testator), and from and after his death, and until the death of James Smisson, the portion of income theretofore bequeathed to John is to be distributed among his "heirs." I think this means those persons who would have been the "heirs" of John if he had died at the time of the receipt of the income that is to be distributed.

If John Smisson had outlived his daughter, Mrs. Schaab, his "heirs" would have been his two daughters, Carrie Smisson and Georgina Westendorf, and his grandson, John Jacob Schaab. And, as I think, the testator did not intend that the distribution of the income of his estate, from time to time as it accrued, pending the life of the last survivor of his wife and three children, should be materially affected by the mere order of events, or should depend upon the precise time when the death of any of the three children of the testator should occur. , I see no sign of a purpose to discriminate among the descendants of his children.

The contention of counsel for Carrie Smisson and Georgina Westendorf is that the word "heirs," in the clause under consideration, points to the three daughters of John Smisson as a class, and that the survivors are entitled to the whole of the thirteen-thirtieths of the income until the time of the final distribution of the estate. But it is and must be conceded that the word "heirs" in a will has been held in cases without number to mean "issue," or "children," or "next of kin," or other relatives of the first beneficiary, according to the intention of the testator to be gathered from the character of the estate and the entire context

16

of the will. I think the word "heirs," in this instance, means the same as "issue," and includes a grandchild.

This testator evidently intended to restrain, and, as I think, did effectively restrain, the final disposition of his principal estate until the death of the last survivor of his wife and three children; and during such restraint he intended, I think, to dispose of the income among his surviving children and the issue of his deceased children, without any discrimination based upon the accidental order of events.

It is argued that this interpretation renders the bequest void for remoteness. Whether a bequest is void for remoteness depends upon whether it violates the rule against perpetuities. The rule adopted by the English courts is that any limitation that does not postpone the vesting of the estate longer than the duration of a life, or any number of lives, in being at the death of the testator (and twenty-one years thereafter), is valid. *Cadell* v. *Palmer, 1 Cl. & Fin. 372, 411; 6 Eng. Reprint 956, 971; 21 Eng. Rul. Cas. 100*, and *American notes* (at *p. 154*).

This is the rule that obtains in the American states, except so far as it may have been changed by statute. *22 Am. & Eng. Encycl. L. (2d ed.) 704, 708; 30 Cyc. 1467, 1470.* In this state we have no statute that affects the present question.

Since under the Smisson will the vesting of the fee was not postponed beyond the duration of four lives in being at the death of the testator, whatever limitations of the life estates may be made in the meanwhile are not within the rule against perpetuities, because they cannot by any possibility postpone the vesting of the fee beyond a period permitted by the rule. *King* v. *Cotton, 2 Wms. P. 674, 677; Low* v. *Burron, 3 Wms. P. 262.*

In short, since the clause I have under consideration applies to income only, the extension of the word "heirs" in that clause does not enlarge the number of lives upon whose duration the vesting of the estate depends; for it has to do only with the description of persons who are to enjoy the income pending the life upon which the vesting of the estate depends.

My opinion, therefore, is that so much of the income on the fund in court as was payable to Lillian Smisson Schaab by the

terms of the order of March 2d, 1910, should be paid to her only child, John Jacob Schaab, so far as it has accrued from and after September 3d, 1910 (the date of Mrs. Schaab's death). So far as it accrued during her lifetime, it of course should go to her executrix.