53 N.J. Super. 139 (1958)
146 A.2d 685
IN THE MATTER OF THE ESTATE OF MARY M.F. PISTOR, DECEASED (TRUST FOR THE BENEFIT OF PAULINE SAINSBURY, ET AL.).
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1958.
Decided December 12, 1958.
*140 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. Rodman C. Herman argued the cause for appellant Daisy Harvey Sainsbury, individually and as administratrix of the estate of Noel E. Sainsbury, deceased (Mr. Parnell J.T. Callahan, of the New York Bar, on the brief).
Mr. Maurice Levinthal argued the cause for respondent John S. Sainsbury, Jr., by his guardian ad litem, Dorothy S. Rosenberger (Messrs. Ward & Levinthal, attorneys).
Mr. Coleman Burke argued the cause for respondent Wayne Sainsbury Rae (Messrs. Bourne, Schmid, Burke & Noll, attorneys).
*141 Mr. William C. Connelly argued the cause for respondent Fidelity Union Trust Company, substituted trustee of the trust created under paragraph Eleventh of the last will and testament and codicils thereto of Mary M.F. Pistor, deceased, for the benefit of Pauline Sainsbury et al. (Messrs. Riker, Emery & Danzig, attorneys; Mr. Edward J. Brown, of counsel; Mr. Connelly, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Daisy Harvey Sainsbury appeals from that part of the final judgment entered by the Essex County Court, Probate Division, determining that Wayne Sainsbury Rae and John S. Sainsbury, Jr., are each entitled to half the corpus of the trust estate held by Fidelity Union Trust Company, as substituted trustee of the trust created under paragraph Eleventh of the last will and testament and codicils thereof of Mary M.F. Pistor, deceased, for the benefit of Pauline Sainsbury et al., and that she, as widow of Noel E. Sainsbury, Pauline's son, is not entitled to share in the distribution of that corpus.
Plaintiff Fidelity Union Trust Company, as substituted trustee, sought approval of its fourth and final account, allowance of commissions for itself and a fee for its attorneys, and directions from the court as to the distribution of the testamentary trust estate. Pauline, decedent's daughter, had married Noel Evrringham Sainsbury, and Noel E. Sainsbury was their son. The defendants are Daisy Harvey Sainsbury, the widow of Noel E. Sainsbury by a third marriage; Wayne Sainsbury Rae, his daughter by a second marriage; and John S. Sainsbury, Jr., the son of John S. Sainsbury, deceased, who in turn was Noel E. Sainsbury's son by a first marriage.
Testatrix died March 26, 1898, a resident of Essex County, N.J., leaving a last will and testament and codicils thereto which were duly admitted to probate by the Essex County Surrogate. The trust estate has been administered in New Jersey by plaintiff since her death. By paragraph Second of her will, testatrix divided her residuary estate, both real *142 and personal, into seven equal shares. In paragraphs Eleventh and Twelfth she provided as follows:
"Eleventh: As to the remaining equal share or seventh part of my residuary estate, I do give, devise and bequeath the same unto my sons Philip Pistor and William Pistor (the survivor of them or such one of them as shall undertake the execution of this trust provision), in trust to receive the rents, issues and profits thereof and to apply the same to the use of my daughter Pauline, wife of Noel Evrringham Sainsbury, during her natural life, free from the control or interference of her said husband, and without any power on the part of my said daughter to alienate or anticipate the same or any part thereof.
Twelfth: Upon the death of my said daughter Pauline, or upon my death if she shall not survive me, I do give, devise and bequeath said share absolutely unto the child or children of my said daughter then surviving, and to the child or children of such as may then be dead but leaving a child or children then surviving  such my grandchildren to share equally and my great-grandchild or children, if any, to take the share the parent would have taken if then living, and in equal shares if more than one."
By paragraph Thirteenth testatrix empowered her executor to sell any or all real estate which she might own at the time of her death, but she did not order the sale.
On August 5, 1893 decedent executed the first of four codicils, and in paragraph Third thereof declared:
"* * * I do further cancel and annul Clause Twelfth of my said will, and direct and provide in the stead thereof that any share which my said daughter Pauline's children might otherwise receive thereunder shall be divided into as many equal portions as there shall be children of her or me surviving, as the case may be, and the portions of such of said children as shall be or have been living at the time of my death be held in trust by my said trustees and the rents, issues and profits thereof applied to the use of each such child for life, and on its death I do give its said share absolutely to its heirs at law, equally, per stirpes and not per capita, the share of any such child of my said daughter born after my decease, I give absolutely to such child, if any." (Italics ours.)
Philip Pistor and William Pistor refused to act as trustees under paragraph Eleventh. The New York Life Insurance and Trust Company, designated as successor trustee under the fourth codicil executed June 27, 1897, also declined to *143 act. Fidelity Union Trust Company (formerly Fidelity Trust Company) was thereupon appointed substituted trustee of the trust created under paragraph Eleventh and the codicils for the benefit of Pauline Sainsbury et al., by order of the Essex County Orphans Court dated June 10, 1898. It qualified and has acted in that capacity since.
Decedent's daughter, Pauline Sainsbury, died in 1944. She had two children, Pauline Purviance, who died in 1915 without issue, and Noel E. Sainsbury who, at the time of his death on Christmas Day 1956, was married to Daisy Harvey Sainsbury. As noted, Noel had had two children; a son, John S., who died in September 1944 survived by his only child John S. Sainsbury, Jr.; and a daughter, Wayne Sainsbury, now Wayne Sainsbury Rae.
The verified complaint seeking approval of plaintiff's fourth and final account of the administration of the trust created under paragraph Eleventh of the will and codicils thereto for the benefit of Pauline Sainsbury et al., for the period from February 28, 1953 to February 27, 1957, shows that the corpus of the estate consisted entirely of personalty having a book value of $51,584.62. Although decedent at the time of her death had apparently owned real property, it had been sold by the executor under the discretionary power of sale given in the will. Plaintiff's request for directions as to the distribution of the trust estate was caused by its uncertainty regarding the true meaning of decedent's directions contained in paragraph Third of the codicil of August 5, 1893, which provided that the principal of the trust created under paragraph Eleventh should be distributed, upon the death of any child of Pauline Sainsbury who became the secondary life tenant of the trust, to such child's "heirs at law, equally, per stirpes and not per capita." Because of this language plaintiff was in doubt as to whether the principal of the trust estate remaining in its hands was distributable to the issue or lineal descendants of Noel E. Sainsbury, deceased, or to those who would be entitled to his personal property in the event that he died intestate. Under the former construction, Wayne Sainsbury Rae and *144 John S. Sainsbury, Jr., respectively the great-granddaughter and great-great-grandson of the testatrix, would each receive one-half of the trust estate. Under the latter construction, plaintiff was uncertain whether the class taking should be determined by the statute governing intestate succession of personal property of New Jersey or of the state wherein Noel E. Sainsbury was domiciled at the time of his death.
There is some doubt as to just what that domicile was. Plaintiff had been advised by the New York attorney of Daisy Harvey Sainsbury that her husband Noel was domiciled in New York at the time of his death. When it made further inquiry to ascertain the facts justifying such a conclusion, the attorney informed plaintiff that Noel had been living in New York City at a time when he accepted temporary employment in Bermuda with the U.S. Navy in 1941 during the war emergency. He married Daisy in 1942, and the two left Bermuda in 1951 after the termination of his government employment and the completion of a writing project. Noel had maintained several New York residences in the meantime, the last being the one he had at the time of his death. After leaving Bermuda he spent some time in Canada, New York and Florida, working on a book. He left New York in September 1956 to spend the fall and winter in Florida, and died there. In her answer Daisy Harvey Sainsbury indicates that she and her husband Noel travelled extensively in Bermuda, Canada, New York and Florida, but apparently never established a permanent home in any one place. She concedes that in the absence of definite knowledge as to his domicile, the provisions of the statute of distribution of the place where he died (Florida) should be presumed to be the same as those of the State of New Jersey, and consequently distribution made in one-third shares to herself, Wayne and John, Jr.
An order to show cause issued upon the filing of the complaint. Thereafter the Essex County Court, Probate Division, appointed Dorothy S. Rosenberger guardian ad litem of John, Jr. By their answers the guardian ad litem and Wayne Sainsbury Rae contended that the principal of the *145 trust fund remaining in plaintiff's hands was under the law distributable to the issue of Noel E. Sainsbury, i.e., to John, Jr. and Wayne, equally.
At the hearing below it was agreed by all counsel that the question concerning the construction and interpretation of the will should be controlled by the laws of this State. Thereafter the trial court, in a letter opinion, concluded that the words "heirs at law, equally, per stirpes and not per capita," as contained in the August 5, 1893 codicil, were intended by testatrix to embrace only the class of persons who are her lineal descendants. "The pattern of her testamentary dispositions prior thereto and commencing with the original will," said the court, "clearly evinces this intention." The court allowed the fourth and final account, approved income and corpus commissions, awarded counsel fees and, as already indicated, held that Wayne and John, Jr., were each entitled to half the corpus of the trust estate, Noel's widow, Daisy, not being entitled to share in the distribution. Daisy Harvey Sainsbury appeals from the last-mentioned determination.
All parties agree that testatrix having died a resident of Essex County, New Jersey, her will and codicils having been admitted to probate there, and the trust estate in question having been administered in New Jersey by plaintiff, distribution of the trust corpus is to be determined by the New Jersey courts and made in New Jersey. As in the construction of all wills, our paramount object is to ascertain the intention of the testatrix and to effectuate it.
We deal preliminarily with two matters. First, where, as here, the residuary estate consisted of personalty and also of realty which was sold under the discretionary power vested in the executor by the will, prior to the time the class designated by the term "heirs at law" was to be determined, the residuary estate is treated as personalty and the term construed to mean statutory distributees of personalty unless it be shown that testatrix used "heirs at law" in a different sense. Meeker v. Forbes, 84 N.J. Eq. 271 (Ch. 1915), affirmed 86 N.J. Eq. 255 (E. & A. 1916); Lippincott v. *146 Purtell, 98 N.J. Eq. 569, 570-571 (Ch. 1925). Accordingly, absent a showing of contrary intention on the part of testatrix, the balance of the trust set up for Pauline Sainsbury would be distributable to those who are the statutory distributees of the personal property of her deceased son, Noel E. Sainsbury. All parties are in agreement with this conclusion.
Second, since Noel's domicile at the time of his death cannot be ascertained with any degree of certainty, it must be presumed that the intestate laws of his domicile are the same as those of New Jersey. Here, also, all parties are in agreement. But even were we compelled to the conclusion that Noel, when he died intestate, was domiciled in any one of the jurisdictions mentioned  Bermuda, New York, Florida, or the Province of Ontario, Canada  the statute of distribution would operate in the same way, so that if his widow, Daisy Harvey Sainsbury, is entitled to share in the trust corpus, she would receive one-third, as in the case of our own statute, N.J.S. 3A:4-2. Bermuda Intestate Estates Act, § 21; New York Decedent Estate Law, § 83; 13 McKinney's Consol. Laws of New York Annotated, c. 13, § 83; Fla. Stat. Ann., § 731.23; Rev. Stat. Ont. 1950, c. 103, § 29.
The cases involving the construction of the words "heirs at law" and similar expressions, whether appearing alone or with other words, are numerous. The words have no fixed meaning applicable in all cases; the decisions are not concordant for the obvious reason that the search for the testator's intention is directed by the circumstances of the particular case. Thus, our courts have held that "heirs at law" and similar expressions may mean children, Howell v. Steelman, 76 N.J. Eq. 423 (Ch. 1909), affirmed 77 N.J. Eq. 586 (E. & A. 1910); issue, In re Smisson, 79 N.J. Eq. 233 (Ch. 1912); or blood relatives, Zeigenfus v. Snelbaker, 38 N.J. Super. 304 (Ch. 1955), depending upon the particular testator's intention. The court in Zeigenfus pointed out that the modifying words used by a testator are of great importance in determining his intent:
*147 "Further fundamental canons of construction of wills are that every word must be, if possible employed to aid in the ascertainment of the testator's intent; that doubts must be resolved in favor of the testator having said what he meant, and that when words are plain and clear they must be used in their ordinary sense. [citing cases]" 38 N.J. Super. at pages 308-309.
As we observed in Greene v. Schmurak, 39 N.J. Super. 392, 400 (App. Div. 1956)
"* * * It is elementary that, to be of effect, the intention must be drawn from the words of the will read as a whole, permitting one part to illumine and reflect upon the meaning of every other part. See Clapp, op. cit. [5 N.J. Practice (Clapp, Wills and Administration)], § 108, p. 247ff., and cases cited; cf. 3 Restatement of the Law of Property, § 242, p. 1196ff. The will itself must furnish the basis for construction. Kempson v. Kempson, 89 N.J. Eq. 205, 207 (E. & A. 1918). And if there be any doubt unresolved by the will and the proofs, the court will ascribe to the testator those impulses which are common to human nature, and will construe the will so as to effectuate those impulses. Hersh v. Rosensohn, 125 N.J. Eq. 1, 8 (Ch. 1939), affirmed 127 N.J. Eq. 21 (E. & A. 1940). Such should be the regard of a court for the testator's intention that it will not construe a provision to be meaningless or void except on the failure of every attempt to render it effective; `the law will weigh the faintest traces of his intention and permit unbounded indulgence to his negligence in expression.' Clapp, op. cit., § 108, p. 251, and cases cited." 39 N.J. Super. at page 400.
In the case of the instant will, testatrix' phrase "heirs at law" is modified by her words "equally, per stirpes and not per capita." We cannot ignore the latter, without violating the rule that every word she used must be employed in ascertaining her intention.
"Per stirpes" has been defined as the "right of representation or according to stock or root, through all degrees of descendancy." 5 N.J. Practice (Clapp, Wills and Administration), § 132, p. 313 (1950), where the author goes on to say that the phrase is used "to designate that mode of reckoning the rights or liabilities of descendants according to which the children of each descendant collectively are allowed only the share which their parent would have taken if living." To the same effect, Central Hanover Bank & *148 Trust Co. v. Helme, 121 N.J. Eq. 406, 422 (Ch. 1937); Fidelity Union Trust Co. v. Farley, 127 N.J. Eq. 346, 349-350 (Ch. 1940), affirmed Fidelity Union Trust Co. v. Stridsberg, 129 N.J. Eq. 386 (E. & A. 1941); 3 Page on Wills (3d ed. 1941), § 1070, p. 269.
We note, especially, the use of the word "equally" in the setting of the entire phrase, "heirs at law, equally, per stirpes and not per capita." Judge Clapp, from whose work we have quoted, has stated:
"* * * It has been said that where the limitation reads `in equal shares per stirpes and not per capita,' there is a conflict between the phrase `in equal shares' and the phrase `per stirpes'  as indeed there is. However, when the phrases are used conjointly  and the latter phrase is rarely used without the former  they can easily be brought into harmony by holding that the testator intended equally among the stocks." (§ 132, p. 314)
This conclusion is supported by Patchell v. Groom, 185 Md. 10, 43 A.2d 32 (Ct. App. 1945), and Bradlee v. Converse, 318 Mass. 117, 60 N.E.2d 345 (Sup. Jud. Ct. 1945).
In view of the modifying language, we hold that testatrix did not use the words "heirs at law" to mean simply statutory distributees. The word "equally," taken in conjunction with "heirs at law," repels the notion that "heirs at law" means statutory distributees, since statutory distributees do not normally take equally, as, for example, in the case of a wife and children. Descendants of the same degree, on the other hand, do take equally. We conclude that the phrase "heirs at law, equally, per stirpes and not per capita" was used to denote a distribution of property among the descendants of a common ancestor, with equality among each stock of the descendants. Consequently, the class designated by the words in question can encompass only those persons who are blood descendants of the second life tenant, Noel E. Sainsbury  namely, his daughter Wayne and his grandson John, Jr. Noel's widow, Daisy Harvey Sainsbury, clearly does not come within that class. Accord: In re Moffitt's Will, 171 Misc. 84, 12 N.Y.S.2d 909 (Surr. Ct. 1939), affirmed 258 App. Div. 992, 16 N.Y.S.2d 765 *149 (App. Div. 3rd Dept. 1940), affirmed 283 N.Y. 743, 28 N.E.2d 969 (Ct. App. 1940); In re Allen's Will, 98 N.Y.S.2d 812 (Surr. Ct. 1950) (dictum).
Eldridge v. Eldridge, 41 N.J. Eq. 89 (Ch. 1886), supports our conclusion. In that case testator directed that upon his son's death the principal of the trust there involved be distributed to his son's "lawful heirs, share and share alike." The court held that the words "share and share alike" were evidence that the testator used the term "lawful heirs" to denote children rather than next of kin. So here; the phrase "equally, per stirpes and not per capita" should also be considered as showing testatrix' intention that the words "heirs at law" be construed to mean issue or lineal descendants. This seems particularly true in view of the fact that "per stirpes," even when considered as referring solely to a mode of description, by its very meaning carries with it the idea of blood descendants.
Counsel for the widow contends that the use of the word "equally" and the phrase "per stirpes and not per capita" indicates that testatrix intended that distribution be made per stirpes to those persons who were "heirs at law" of Noel E. Sainsbury; that she did not intend by these expressions that an equal distribution be made among all of the beneficiaries, but only that there be an equal distribution within each group. Cited in support are Irvin v. Brown, 160 S.C. 374, 158 S.E. 733 (Sup. Ct. 1931) (testator left all his property to his wife for life, and at her death the property remaining was to be divided one-third to her heirs, per stirpes, and two-thirds to testator's heirs, per stirpes); and Mississippi Valley Trust Co. v. Palms, 360 Mo. 610, 229 S.W.2d 675 (1950) (will provided for per stirpes distribution). Neither is apposite; in both cases there is lacking the important word "equally," here present.
One of the weaknesses of the argument made on behalf of the widow is that it disregards the force of the word "equally" in contending for an equal distribution among Wayne, John, Jr. and herself. It is entirely fortuitous that at the moment when the trust corpus was finally to be distributed, *150 there were three possible takers. Suppose there were three lineal descendants of testatrix. The widow could not then argue that she was entitled to a third of the corpus and the lineal descendants to the other two-thirds, for that would vitiate the word "equally." When this supposititious case was posed to counsel, the only solution offered was to ignore "equally" altogether. We cannot, of course, do so.
As a final point, counsel for Daisy Harvey Sainsbury argues that since courts, in interpreting wills, seek to avoid partial intestacy, the presumption against intestacy should lead us to conclude that testatrix, by using the language she did, meant statutory distributees and not lineal descendants or issue. The answer to this may be found in what this court recently said in In re Pleasonton's Estate, 45 N.J. Super. 154, 164 (App. Div. 1957). We there stated that although the law favors a will construction which avoids intestacy, as presumably contrary to testamentary intent, "there is no canon demanding avoidance of a clearly expressed disposition not inconsistent with the over-all plan of the testament because intestacy, not necessarily actually foreseen, and not inevitable, could conceivably result." The presumption is merely a rule in aid of construction but when, as here, there is strong affirmative language to support the conclusion we have reached, there is no need to resort to such presumption.
Our examination of other provisions of the will and codicils shows that they are entirely consistent with the conclusion at which we have arrived  that testatrix did not intend to include within the class that was to take as "heirs at law, equally, per stirpes and not per capita" the spouse of Noel E. Sainsbury. They demonstrate that she was thinking in terms of blood descendants  one of the "impulses which are common to human nature" and which courts seek to effectuate in construing a will. Greene v. Schmurak, above, 39 N.J. Super. at page 400.
Affirmed.