JAMES COYLE et al.

*v.*

JAMES COYLE et al.

[Submitted October 15th, 1907. Decided October 23d, 1907.]

1. The word "issue," in its ordinary legal meaning, embraces grandchildren and remoter descendants, as well as children. When used in a will, a more restricted meaning may be attributed to it, if, from the terms of the testamentary disposition, it appears that the testator used the word in a particular meaning less general than the ordinary meaning.

2. Testator devised his residuary estate in trust for his wife for life, and directed that at her death the same should be divided equally, share and share alike, between his three children, "or such of them as shall survive my said wife, but if any of my said children shall have died, leaving issue, such issue shall take the share the parent would have taken if living." A child died after the death of the testator and before the wife, leaving children and children of a deceased child.—*Held,* that the word "issue" was equivalent to "children," and the grandchildren of the deceased child of the testator took nothing.

On bill for partition. On demurrer.

Patrick Coyle, deceased, devised and bequeathed his residuary estate in trust for the benefit of his widow for life and directed that after her death the property should be sold by the trustee and, after payment of a small legacy, the residue should be divided among his three children. The present controversy arises by reason of the language used by testator in directing the division between the children. The language of the will material to the present controversy is as follows:

"The residue of said proceeds to be divided equally, share and share alike, between my three children, John, James and Margaret, or such of them as shall survive my said wife, but if any of my said children shall have died, leaving lawful issue, such issue shall take the share their parent would have taken if living."

John died after the death of testator and before the widow, leaving children and children of a deceased child. The widow is now dead. The question for determination at this time is whether the children of the deceased child of John have an interest in the property. This question is raised by a demurrer to a bill for partition and accounting filed by the grandchildren of John.

*Messrs. Badgley & Badgley,* for the complainants.

*Mr. Walter L. McDermott,* for the demurrants.

LEAMING, V. C.

The contention in behalf of the grandchildren of John (children of his deceased son) is that they are the "lawful issue" of John within the meaning of testator. The contention in behalf of the children of John is that the word "issue," as used by testator, is limited in its significance by the subsequent use of the word "parent," and in consequence refers only to the children of John.

The word "issue," in its ordinary legal meaning, embraces grandchildren and remoter descendants, as well as children. When used in a will a more restricted meaning may be attributed to it if from the terms of the testamentary disposition it clearly appears that the testator used the word in a particular meaning less general than the ordinary meaning. This is the rule as stated by the chancellor in *Inglis* v. *McCook, 68 N. J. Eq.* (*2 Robb.*) *27, 39.* The present inquiry is, therefore, whether it appears from the will in question that testator used the word "issue" in a restricted sense which includes children only. The only part of the will which affords assistance in the ascertainment of testator's intention is that part above quoted. The difficulty which is encountered in attributing to the word "issue" the significance of descendants, when used as it is here used, is at once apparent. The expression, "such issue shall take the share their parent would have taken if living," suggests that testator, in using the words, "their parent" referred to children only as issue. I do not think I should feel at liberty to adopt the view that this language discloses the intent of testator to use the word "issue" in the restricted sense referred to with sufficient clearness to warrant a court in disregarding the natural significance of the word, were it not for the fact that eminent jurists have in the past adopted that view. In *Sibley* v. *Perry, 7 Ves. Jr. 523,* Lord Eldon held the word "issue" similarly used in a will in collocation with the word "parent" to be used in the restricted sense of children to the exclusion of grandchildren. I think it may be fairly said that this determination of *Sibley* v. *Perry* does not appear to have been wholly free from the influence of considerations arising from other provisions of the will and circumstances surrounding it; but the case appears to have always

stood as authority for the rule of construction stated, though it has not escaped severe criticism. See criticism in *Ralph* v. *Carrick, L. R. 11 Ch. Div. 873. Sibley* v. *Perry* is followed in *Pruen* v. *Osborn, 11 Sim. 132, 138,* and *Heasman* v. *Pearse, L. R. 8 Eq. 299,* and is referred to in *Ralph* v. *Carrick, L. R. 5 Ch. Div. 984, 987; Kenyon* v. *Birks, 1 Ch. 703, 706 (1899),* and *Kenyon* v. *Birks, 1 Ch. 417, 419 (1900).* It may be said, therefore, that in England it is a settled rule of construction that the word "issue," when used in connection with the word "parent," in the manner it is used in the will now under examination, will be understood as meaning children and excluding grandchildren. In Massachusetts the same view is adopted. *King* v. *Savage, 121 Mass. 303, 306.* As to New York, see *Palmer* v. *Horn, 84 N. Y. 516, 519; Drake* v. *Drake, 134 N. Y. 220, 225; Murray* v. *Bronson, 1 Dem. (N. Y.) Surr. Rep. 217.* In this court *Sibley* v. *Perry* has been cited in approval of the general rule that in a will the word "issue" may mean children. *Price* v. *Seisson, 13 N. J. Eq. (2 Beas.) 168; Inglis* v. *McCook, 68 N. J. Eq. (2 Robb.) 27, 40.* In view of the support given by the cases above cited to the view that the language used by testator clearly imports an intention upon his part to use the word "issue" with a restricted meaning equivalent to the word "children," I am compelled to hold that the grandchildren of John take nothing.

I would add, however, that I am strongly impressed that testator's purpose may have simply been to secure to the line of any child who should predecease the life tenant, leaving descendants, the one-third share which such child would have received if living at the termination of the life estate, or in other words, that the share should descend according to law if lineal descendants existed. Had testator simply provided that at the termination of the life estate the property should be divided between John, Henry and Margaret, John would have enjoyed a vested remainder in the undivided one-third of the property. That estate would have been subject to alienation, and if not disposed of in his lifetime by will or conveyance, it would have descended to his heirs-at-law in the event of his death prior to the termination of the life estate. But the testator was not content with that provision. He added:

"or such of them as shall survive my wife, but if any of my said children shall have died, leaving lawful issue, such issue shall take the share their parent would have taken if living."

This added provision destroyed the possibility of any person inheriting from either of the children who should die before the termination of the life estate unless such person was the issue of the one so dying. Should one of the three die without issue the surviving took under the will and not through the one so dying. The added provision in like manner destroyed the power of absolute alienation. These provisions, taken together, and the consideration of their effect, suggest to me a general purpose upon the part of testator to preserve the one-third share of a deceased son dying during the term of the life estate to his line, if such line should exist, rather than a specific purpose to vest the share in the children of one so dying to the exclusion of the children of a deceased child; that the issue should take in the well understood manner of ordinary descent. A contrary intent would seem to call for some clear and specific statement of a contrary purpose. But as already stated I am impelled to give to the language used the force which the adjudicated cases seem to require.

I will advise an order sustaining the demurrer.