The bill is by the substituted testamentary trustee for instructions as to the proper distributees of a trust fund created by the fourth and sixth paragraphs of the second codicil of the will of Thomas Negus, deceased, and particularly involves the construction of the following clause:
"And upon the further trust upon the death of my said daughter Emma Ann to pay over to any children she may have the said principal of the said one-seventh or the residue thereof not paid to their mother as aforesaid and any interest and income thereof then remaining in their hands equally to be divided between her said children, share and share alike, and in case she leaves no children surviving her then to pay the same to her brothers and sisters surviving her and to the issue surviving of deceased brothers or sisters in equal shares, the issue taking only the parents' share."
The sole inquiry is as to the meaning of the word "issue" as used in the quoted clause, and whether it includes grandchildren and more remote descendants or is restricted to *Page 455 
children of the brothers and sisters. In its ordinary sense the word "issue" would include grandchildren and remoter descendants as well as children. Ballentine v. DeCamp, 39 N.J. Eq. 87;Coyle v. Coyle, 73 N.J. Eq. 528; Security Trust Co. v.Lovett, 78 N.J. Eq. 445; Tantum v. Campbell, 83 N.J. Eq. 361;Dennis v. Dennis, 86 N.J. Eq. 423. This technical sense is always attributed to the word when used in deeds. WeehawkenFerry Co. v. Sisson, 17 N.J. Eq. 475. But in wills the word is frequently construed in a more restricted sense. The correct rule is well stated by Chancellor Magie in Inglis v. McCook,68 N.J. Eq. 27 (at p. 39), as follows:
"But when used in a will a more restricted meaning may be attributed if, from the terms of the testamentary disposition, it clearly appears that the testator used the word in a particular meaning less general than its ordinary meaning. * * *
"To properly pursue this inquiry, it is obvious that we must start with the assumption that the testator used the word in its ordinary signification. We must then examine the whole will, and we will not be able to attribute to the word a more restricted meaning unless we find in the will itself clear indication that the testator used it in this case in such restricted meaning."
This rule has been uniformly recognized and applied in this state. (See cases cited, supra.) It finds its foundation in the general rule that the intention of the testator must govern in the interpretation of wills. More than a century ago it was announced by Lord Chancellor Eldon in Sibley v. Perry
(1802), 7 Ves. 522, and subsequently followed in England inPruen v. Osborne (1840), 11 Sim. 132; Kenyon v. Birks
(1899), 1 Ch. 703; Kenyon v. Birks (1900), 1 Ch. 417.
In this state it was recognized and applied by Vice-Chancellor Leaming in Coyle v. Coyle, supra; by Vice-Chancellor Howell and by the court of errors and appeals in Dennis v. Dennis,supra; and more recently by Vice-Chancellor Backes in Skinner
v. Boyd (1925), 98 N.J. Eq. 55, affirmed, on the opinion below, 100 N.J. Eq. 355. The *Page 456 
rule may, therefore, be said to be firmly fixed in our law, and where the language of the will under consideration warrants it should be given effect.
In Sibley v. Perry, supra, the language of the will under consideration was as follows:
"and if all or any of them shall die before I do, then I will that the lawful issue of every one of them so dying before me shall share and share alike have and enjoy that 1,000£ stock, which their respective parents if living would have had and enjoyed."
It was there held that the words "which their respective parents if living," following the word "issue," restricted the meaning of that word to "children" of the first taker. In Coyle
v. Coyle, supra, the language of the will which Vice-Chancellor Leaming had under consideration was as follows:
"But if any of my said children shall have died, leaving lawful issue, such issue shall take the share their parent would have taken if living,"
and he felt that it was so similar to that considered by Lord Eldon that he was bound to follow the rule referred to, although admitting that it was open to criticism. So in the instant case the language involved is so similar to that involved in Sibley
v. Perry and in Coyle v. Coyle that I do not feel at liberty to disregard the rule irrespective of its soundness. Counsel for the complainant and grandchildren claim that that portion of the Coyle Case involving this rule has never been followed or approved in this state, except in the case ofDennis v. Dennis, supra, in which they claim the court of errors and appeals, in its per curiam comment, passed some reflection upon Vice-Chancellor Howell's reasoning and adherence to the rule stated. This is incorrect. In the Dennis Case
Vice-Chancellor Howell referred to both Sibley v. Perry andCoyle v. Coyle, and said that the rule "has been followed with very little, if any, diminution of its force as a precedent;" also that "where a `parent' of issue is spoken of the word [issue] is prima facie restricted to children of the parent." The court of errors and appeals affirmed the decision *Page 457 
of the court of chancery on Vice-Chancellor Howell's opinion and thereby adopted it as its own. The per curiam comment referred to by counsel was a criticism of the argument of the appellant's counsel, and not of the language of the vice-chancellor. Counsel have also evidently overlooked the case of Skinner v. Boyd,supra, which is an example of the application of the rule ofCoyle v. Coyle and Sibley v. Perry. There the limiting words were "issue taking under this provision shall take only the share of my said nephew or niece who is legally represented by such issue." Those words and the language here are of equal import. It was there held that children of deceased nephews and nieces took to the exclusion of remoter descendants and the court of errors and appeals affirmed on the opinion of this court. These cases clearly show that the rule referred to has been adopted as the law of this state, and I am bound by it.
"But this rule of construction may again be controlled by the general nature and scope of the whole will and by the use of the word `issue' in other parts of the will which may enlarge this construction and restore the word to its original comprehensive meaning." Maynard v. Wright, 26 Bev. 285, cited and quoted inDennis v. Dennis, supra.
But, in my judgment, little help in the construction of this language can be had from a consideration of other parts of the will. The scheme of this will is not difficult to understand. The testator's first concern was to provide an income for his wife during her lifetime, preserving the fund producing such income until her death, when it was to be distributed among his children. He had seven children, five sons and two daughters. The residue of his estate and the fund established for his wife's support he divided equally among the seven children, except that the share of his daughter Priscilla was to be placed in trust for her for life with discretionary power in the trustees to use the principal for her support. At her death the principal was to be divided among her children, of which she had four. The other six-sevenths of the estate was to go to the other children absolutely as tenants in common. Later, in the second codicil, *Page 458 
he changed the provision with respect to the one-seventh interest intended for his daughter Emma Ann, and placed it in trust for her for life with like provisions as in the case of Priscilla; but Emma Ann had no children, and he therefore provided that if she should die without children surviving her, her share was to go to the surviving brothers and sisters; and in the event of the death of any of them before Emma Ann, to their issue, such issue to take the parent's share. Obviously, the testator's intent as to this one-seventh interest was that it ultimately should go to Emma Ann's surviving brothers and sisters in the same manner as they received their original shares. But anticipating that some of the other six might die before Emma Ann, he provided that their respective children (assuming that "issue" here means "children") were to receive their parent's share. This interpretation harmonizes the whole will. Any other construction of this language, it seems to me, would be strained and unnatural. That where he meant "children" of the first taker in other parts of the will, he said "children" is not controlling, as in drafting a will one is privileged to choose one's own language with the assurance that different expressions having the same meaning will be given the same effect; and where the law has fixed a certain and definite meaning for a certain word or expression, that word or expression cannot be given a different meaning or effect except upon plain and convincing evidence in the will itself that a different meaning or effect was intended. I think it obvious that the scrivener who wrote this will used the words "issue" and "parent" advisedly. And the word "surviving" following the word "issue" must be given some significance. It will not be assumed that the testator intended it to have none, and it has none unless it is a word of limitation. If remote descendants are included in the word "issue," then the word "surviving" must be elided as surplusage. Forceful arguments are presented upon both sides of this controversy, but that fact merely demonstrates that precedent is a safe guide.
Counsel for the grandchildren argue that later provisions in a third codicil with respect to Priscilla's share of this *Page 459 
estate should be considered in construing the intent of the testator as disclosed by the language under inquiry. But, although a will takes effect as of the date of death of the testator, in construing its language and endeavoring to determine the testator's intent, it is necessary to put oneself in the place of the testator as nearly as possible at the time the words were written and the will executed. The intention as expressed in a will or codicil cannot be inferred from the language of a subsequent codicil unless the later language is plainly referrable to the former. There is nothing in the will, to my mind, which disclosed that the testator intended his great-grandchildren and remoter descendants to share in his estate. Only once, outside of the fourth clause of the second codicil, did the testator use the word "issue." That was in paragraph 5 of the will, but it does not seem to me to be helpful.
I will advise a decree directing the distribution amongst the children of the deceased brothers and sisters of Emma Ann to the exclusion of remoter descendants and distribution should be perstirpes.