George W. Helme died June 13th, 1893. The substituted complainants herein seek: (1) A construction of the provisions of his last will and testament; and (2) of the effect of the purported exercise of the power of appointment therein contained by the last will and testament and codicil of his son, George A. Helme, who died April 29th, 1931; and (3) instructions as to the proper distribution of the funds in their hands. George W. Helme, above named, for convenience of identity will, hereinafter, be referred to as George W. Helme (I); and George A. Helme, above named, will, hereinafter, be referred to as George A. Helme (II) and his son George W. Helme, hereinafter mentioned, will be referred to as George W. Helme (III). *Page 409 
The original bill in this cause was filed by John W. Herbert, Jr., the sole surviving trustee under the last will and testament of the said George W. Helme (I), deceased. He died on August 26th, 1936, before any action was taken on the bill. In his last will and testament, which was admitted to probate by the New Jersey prerogative court, he named the substituted complainants as his executors. Because of Herbert's death, the suit abated, but by order made April 9th, 1936, it was revived. These complainants filed a supplement to the bill of complaint which sets forth matters arising subsequently.
The paragraphs of the will of George W. Helme (I) which are of chief concern are eleventh and thirteenth. Paragraph eleventh reads as follows:
"Eleventh: I give, devise and bequeath to my son, George A. Helme, five hundred shares of the capital stock of The George W. Helme Company. To have and to hold the same to him during his natural life, and upon his death, leaving issue him surviving, I give and devise the same in fee simple to such issue, or to such of them and in such shares and estates as my said son may by last will and testament direct, limit and appoint, and in default of such limitations and appointment to such issue per stirpes, and in case of his death, without leaving issue him surviving I give and devise the same to his nephews and nieces, and the issue of such of them as may be dead, in such shares and estates as my said son may by last will and testament direct, limit and appoint, and in default of such appointment to such nephews and nieces and the issue of such as may be dead, equally perstirpes.
That part of paragraph thirteenth of the said will so far as it concerns the present suit, reads as follows:
"Thirteenth: I give, devise and bequeath all the rest, residue and remainder of my estate * * * to my trustees * * * upon the trust following, viz.: to receive the rents, issues and profits * * * and to apply the net income * * * as follows: * * * to the use of my son George A. Helme, for life, one-third part thereof, and upon the death of * * * my son, leaving a child or children, or the issue of a deceased child or children * * * him surviving, to convey and pay over one-third part of the said trust property and estate to such child or children, or to such of them and in such estates, shares and proportions as my * * * son so dying shall, by last will and testament direct, limit and appoint, and in default of such appointment, then to such child or children and the issue of a *Page 410 
deceased child or children equally per stirpes, and in case of the death of either of my daughters, or son without leaving issue her or him surviving, then to convey and pay over the said one-third part to her or his nephews and nieces, and the issue of such of them as may be dead, in such shares, estate and properties as my daughter or son so dying shall by last will and testament direct, limit and appoint, and in default of such limitation and appointment, then to such nephews and nieces, and the issue or such as may be dead equally per stirpes.
In case either of my daughters or son shall die before me, leaving issue me surviving, the share herein devised in trust for the use of such daughter or son, I give and devise to such issue, and if any of the children of such daughters or son shall be under age at the time of my decease, the share coming to each of such children shall be payable upon his or her arriving at that age, and in case of his or her death under that age, his or her share shall go to his or her issue, if any, and if none, to his or her surviving brothers and sisters and the issue of such as may be dead per stirpes, and in the meantime my said trustees shall retain and continue to hold the shares of my daughter or son so dying, or so much thereof as shall belong to children under age, and keep the same invested and accumulate the income for the benefit of such child or children, until they shall severally arrive at the age of twenty-one years, or sooner die.
And in case either of my daughters or son shall die before me without leaving issue me surviving, the share herein devised in trust for her or him shall remain in the trust estate for the benefit of my surviving children and their issue, to be held in trust for them as aforesaid, and their shares shall be increased and this will shall be read and construed accordingly."
"In construing a will the predominant idea of the testator's mind, if apparent, is heeded as against all doubtful and conflicting provisions which might of themselves defeat it."Peer v. Jenkins, 102 N.J. Eq. 235. With that thought in mind we proceed to analyze the situations in the instant case. The power of appointment given George A. Helme (II) under paragraph eleventh of his father's will, we find is exercised by him by his directions in paragraph fourteenth of his own will, as modified by paragraph first of the codicil thereto dated May 14th, 1927, which disposed of the fund as follows: One part thereof to his daughter, Margaret H. Marston, in fee; one part thereof to his son, James B. Helme, in fee; the remaining part to his son, George W. Helme (III), for life, with remainder to his "issue, if any, him surviving" as follows: *Page 411 
"Whereas, under the last will and testament of my late father, George W. Helme, dated September 5th, 1892, in the `Eleventh' clause of said will I have power by my last will and testament to direct, limit and appoint, in the event of my death leaving issue me surviving, to such issue the shares and estates such issue shall take and have in Five Hundred (500) shares of the capital stock of `The George W. Helme Company; * * *
Now, therefore, in the exercise of the power in me in this paragraph first above mentioned, and of every other power now or at the time of my decease hereunto enabling me, I do hereby will and direct that all the shares * * * shall, upon my death, be divided into three (3) equal parts and I do hereby further will, direct, give, bequeath and appoint
(a) one of said parts to my said daughter, Margaret H. Marston, in the event that she shall survive me * * *;
(b) one of said parts to my said son, James B. Helme, in the event that he shall survive me * * *
New (c): The remaining one of said three equal parts to my trustees * * *
(1) To pay over such net interest and income, semi-annually or quarter-yearly, to, for and on behalf of my son, George W. Helme, should he survive me, during the period of his natural life * * * [spendthrift provisions] * * * during the term of the natural life of my said son, George, and upon the death of my said son, George, to pay over and deliver the principal of said fund to his issue, if any, him surviving, in equal shares, per stirpes and not per capita, and in default of issue of my said son, George, him surviving, then upon his death to pay over and deliver the principal of said fund to my other then surviving issue, in equal shares, per stirpes and not per capita;
(2) if my said son, George, shall have predeceased me * * *
(3) if the provisions, or any of them, above mentioned in connection with the payment over and delivery of either the income or the principal of said trust fund to the `issue' of my said son, George, as directed in subdivisions `(1)' and `(2)' of this paragraph, shall be held or determined to be invalid by any court of competent and final jurisdiction, then I will, direct, give, bequeath and appoint that all such income and principal as to which such provisions shall be held to be invalid, shall be paid over and delivered to my said daughter, Margaret H. Marston, and to my said son, James B. Helme, or to the survivor of them, instead of to such issue of my said son, George, with the request on my part hereby expressed that the same shall be forthwith delivered and paid over by them or the survivor of them to such issue, if any, of my said son, George, in equal shares, perstirpes and not per capita; and
(4) in the event of the cessation of the payment of said income to my said son, George, otherwise than by his death as hereinbefore provided for, it shall be lawful for my said trustees * * * to pay over to or apply for the use of my said son or for the use of his issue the whole or any part of said income * * *." *Page 412 
George W. Helme (III) has been adjudged a lunatic, and is confined in a sanitarium. A committee, consisting of the Central Hanover Bank and Trust Company and George Frankenthaler, were appointed by the Hudson county orphans court guardians of his person and property, and, by this court his guardians ad litem
in this suit.
George A. Helme (II) by the fifteenth paragraph of his will, and paragraph two of the codicil thereto, exercised the power of appointment given him under paragraph thirteenth of the will of his father, George W. Helme (I), in the same manner, and to the same extent, he employed in exercising the power given him under the provisions of paragraph eleventh of the will of his father, George W. Helme (I), above indicated. Also, by paragraph thirteenth of his will, he made this disposition:
"I give and bequeath
(a) to my daughter, Margaret H. Marston, wife of Edgar J. Marston, now residing at Fort Worth, Texas, the sum of Twenty-five thousand dollars ($25,000), but in the event that she shall predecease me then to her issue her surviving, in equal shares, per stirpes and not per capita; and
(b) to my son, James B. Helme, now residing at Rye, Westchester County, New York, the sum of Twenty-five thousand dollars ($25,000), but in the event that he shall predecease me then to his issue him surviving, in equal shares, per stirpes and notper capita."
He made no such bequest to his son, George W. Helme (III). In paragraph seventeenth of his will he gave to the three children of his daughter, Margaret, $30,000; to the child of his son, James, $10,000; and $20,000 to the two children of his son, George W. Helme (III).
George A. Helme (II) in disposing of his own residuary estate, gave three-twelfths thereof outright to his widow, Mary T.B. Helme; one-twelfth thereof outright to his daughter, Margaret H. Marston; one-twelfth thereof outright to his son, James B. Helme; and a life estate in one-twelfth thereof to his son, George W. (III), with remainder over to the issue of the last named. The remaining six-twelfths of his residuary estate, George A. Helme (II) placed in trust for his widow, Mary T.B. Helme, for life, and upon *Page 413 
her death, the fund is to be divided into three equal shares, one of which goes to his daughter, Margaret H. Marston; another equal part thereof goes to his son, James B. Helme; and the remaining one-third share goes to his son, George W. (III) for life, with the remainder over to the issue of George W. (III).
Counsel for the guardians of George W. Helme (III) insists that the exercise of the power of appointment by George A. Helme (II) violated the rule against perpetuities. Counsel for the defendant executors and trustees takes a contrary view, and is supported in his contention by counsel for the infant defendants.
The rule against perpetuities is a product of the common law. It maintains in this state. It is not a rule of interpretation or construction, it is one of property. Gray, in his excellent work on The Rule Against Perpetuities (3d ed.) 174 § 201, restates the rule in these words: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." It is directed solely against the unlawful postponement of the vesting of estates, and is, in no way, applicable to their possession or enjoyment. Lembeck v. Lembeck, 73 N.J. Eq. 427; affirmed,74 N.J. Eq. 848; Guarantee Trust Co. v. Latz, 119 N.J. Eq. 194.
The donee of the power takes from the donor, the original testator, from the date of his death.
In the instant case the rule must be measured, or computed, from the date of the death of the testator, the donor, George W. Helme (I), June 13th, 1893. Ogden v. McLane, 73 N.J. Eq. 159;101 A.L.R. 1282 and citations; 1 A.L.R. 374 and citations; 49Corp. Jur. 979 § 65 and citations; 21 R.C.L. 784 and citations; In re Helme, 95 N.J. Eq. 197; McGill v. TrustCompany of New Jersey, 94 N.J. Eq. 657, 664; Graves v. Graves,94 N.J. Eq. 268; Camden Safe Deposit and Trust Co. v. Guerin,89 N.J. Eq. 556; Kates v. Walker, 82 N.J. Law 157; In reSmisson, 79 N.J. Eq. 233, 242; Hewitt v. Green, 77 N.J. Eq. 345,361; Stout v. Stout, 44 N.J. Eq. 479. The rule is discussed in 21 R.C.L. 805, where the following appears: *Page 414 
"To determine whether the execution of a power infringes against the rule against perpetuities it is necessary to consider the execution as though contained in the instrument creating the power and then see whether the power of alienation, if created by the donor in the original instrument would by any possibility extend beyond the prohibited time."
In Graham v. Whitridge (Md.), reported in66 L.R.A. 408, the court says:
"This rule against perpetuities is a rule of law, and not one of interpretation. In determining the validity of testamentary dispositions, the objects of the testator's bounty are first to be ascertained, without reference to the rule. The instrument is to be interpreted in precisely the same manner as if there was no rule against perpetuities, and as if the intention expressed by the words may lawfully be carried out. Having thus, apart from any consideration of the validity of this intention, arrived at the true construction of the will, the rule against perpetuities should then be applied to the objects so ascertained. Pearks v.Moseley, 5 App. Cas. 714; In re Mervin (1891), 3 Ch. 200.
The rule against perpetuities is the same at law as in equity."
In In re Friday, 313 Pa. 328, the court says:
"As was said in Lockhart's Estate, 306 Pa. 394, 401;159 Atl. Rep. 874, 876: `The rule (against perpetuities) is not one ofconstruction, but a positive mandate of law to be obeyedirrespective of the question of intention. The proper procedureis to determine the true construction of the will, just as ifthere was no such thing in existence as the rule, and then toapply it rigorously in complete disregard of the wishes andintention of the testator.'" (Italics mine.)
In Heasman v. Pearse, L.R. 7 Ch. 275, 283, the court said:
"It is against the settled rules of construction to strike out any words from a will because they offend against the perpetuity rule. For all purposes of construction, the will must be read as if no such rule existed. Any disposition which, so reading and construing it, are found to be the testator's wishes must be taken to be his wishes, and if those wishes offend against the rule, the gifts would fall, and must fail, *Page 415 
accordingly; but they are not the less part of his will, and to be resorted to as part of the context for all purposes of construction, as if no such rule had been established."
In Hewitt v. Green, supra, Vice-Chancellor Stevenson (77 N.J. Eq., at p. 352) said:
"The argument on behalf of the validity of this trust for the grandchildren naturally is based largely upon the rule that where two constructions of a will are possible and reasonable, and one of these constructions makes the testamentary disposition illegal while the other makes such disposition legal, the latter is to be chosen. This principle, however, seems to me sometimes to have been carried to such an extent as to result in a will being made for the testator which he never intended to make. Where it isreasonably plain what the testator's scheme was, and such schemeis illegal, a court ought not to resort to a fancifulconstruction and by excluding the illegal intention fromconsideration find a legal intention which in fact the testatornever had. In order to have a situation to which the above mentioned well settled rule of construction is applicable, the testator's meaning must be doubtful without regard to the legality or illegality of one of the two possible meanings. Testators must execute their wills according to law, and must not endeavor to make unlawful testamentary dispositions of their estates or else their testamentary efforts will be abortive. Thelaw undertakes to take care of the disposition of a man'sproperty after his death so far as he does not make a lawfultestamentary disposition of it. When by an artificial and technical course of reasoning the invalid gift which the testator intended to make is converted into an entirely different valid gift which the testator did not intend to make, the result is a very gross injustice and a violation of the rights involved in the testamentary disposition of property. It is one thing todeny the right of a testator to make an illegal disposition ofhis estate, or of a portion of his estate; it is a very differentthing after denying that right to distort the abortive illegalgift which the testator meant to make into a legal gift which hedid not intend to make." (Italics mine.) *Page 416 
When George W. Helme (I) died, his son, George A. Helme (II), survived him. But George W. Helme (III), the son of George A. Helme (II), was not born until January 26th, 1895, which was approximately eighteen months after the death of his grandfather, George W. Helme (I).
The eleventh paragraph of the will of George W. Helme (I) suggests this inquiry: What is included in the word "issue" as used therein? Does it embrace grandchildren and other remote descendants? Or is the word limited to children and to children of a deceased child?
Ordinarily, "issue" involves grandchildren and the descendants of a more remote degree, as well as children. But when the word "issue" is used in a will, a more confined meaning is given to it if it appears from the testamentary disposition that the testator used the term in a more restricted, or particular sense.Pierson v. Jones, 108 N.J. Eq. 453; Coyle v. Coyle, 73 N.J. Eq. 528; Dennis v. Dennis, 86 N.J. Eq. 423. In21 R.C.L. 801, this appears: "It seems generally to be agreed that a power to appoint to `children' does not include grandchildren, as objects of the power." Citing Cruse v. McKee, 2 Head
(Tenn.) 1; Bristow v. Warde, 2 Ves. Jr. 336; Alexander v.Alexander, 2 Ves. 640. See note: 64 L.R.A. 901. Also seeLippincott v. Ridgway, 10 N.J. Eq. 164; 69 Corp. Jur. 842.
We find in paragraph eleventh of his will the testator gave his stock to his son, George A. Helme (II) for the period of his natural life; and upon his death leaving "issue him surviving"
(italics mine), such shares go to such issue in fee-simple, perstirpes. He further, in said paragraph, provided "or to such of them (issue) and in such shares and estates as my said son, George A. Helme (II) may by last will and testament direct, limit and appoint;" and, then, "in default of such limitations and appointment to such issue per stirpes." Does not this last phrase "in default of such limitations and appointment to such issue per stirpes," convey the intent with which the word "issue" is used? It shows that while George A. Helme (II) had the power of limitations and appointment per stirpes, its exercise extended only to any of his surviving children, or the descendants of *Page 417 
a deceased child. He was definitely without power to limit and appoint his grandchildren, while the parents of such childrenlived. In this state, the cases indicate that the courts have restricted the word "issue" to issue per stirpes, rather than to issue per capita. In case of doubt about the distribution to be made either per capita or per stirpes, the courts award to issue per stirpes. Chancellor Runyon, in Stoutenburgh v.Moore, 37 N.J. Eq. 63 (at p. 71), said: "If it is doubtful whether he intended the distribution among his grandchildren to be per stirpes or per capita, the court should adopt a construction in favor of the former method, not only as being most probably in accordance with his intention, but also as being in accordance with the policy of the law." Ballentine v.DeCamp, 39 N.J. Eq. 87; Dennis v. Dennis, supra. In the last cited case, the court held that as, under the original scheme of the will, there is a clear expressed intention on the part of the testator to treat the word "issue" as if it were "children," and to provide for a division per stirpes, and as, in the provision in the codicil in default of issue at the death of any of his sons he seems to have had in mind a stirpital distribution of his estate, the term "issue" should be so construed as to exclude the children of a living parent.
The meaning and application of the word "issue" is discussed at some length in Coyle v. Coyle, supra, from which I quote (73 N.J. Eq., at p. 530):
"The word `issue' in its ordinary legal meaning, embraces grandchildren and remoter descendants, as well as children. When used in a will a more restricted meaning may be attributed to it if from the terms of the testamentary disposition it clearly appears that the testator used the word in a particular meaning less general than the ordinary meaning. This is the rule as stated by the chancellor in Inglis v. McCook, 68 N.J. Eq. (2Robb.) 27, 39. The present inquiry is, therefore, whether it appears from the will in question that testator used the word `issue' in a restricted sense which includes children only. The only part of the will which affords assistance in the ascertainment of testator's intention is that part above quoted. The difficulty which is encountered *Page 418 
in attributing to the word `issue' the significance of descendants, when used as it is here used, is at once apparent. The expression, `such issue shall take the share their parent would have taken if living,' suggests that testator, in using the words `their parent' referred to children only as issue. I do not think I should feel at liberty to adopt the view that this language discloses the intent of testator to use the word `issue' in the restricted sense referred to with sufficient clearness to warrant a court in disregarding the natural significance of the word, were it not for the fact that eminent jurists have in the past adopted that view. In Sibley v. Perry, 7 Ves. Jr. 523, Lord Eldon held the word `issue' similarly used in a will in collocation with the word `parent' to be used in the restricted sense of children to the exclusion of grandchildren. * * * It may be said, therefore, that in England it is a settled rule of construction that the word `issue' when used in connection with the word `parent,' in the manner it is used in the will now under examination, will be understood as meaning children and excluding grandchildren. In Massachusetts the same view is adopted. King
v. Savage, 121 Mass. 303, 306. As to New York, see Palmer v.Horn, 84 N.Y. 516, 519; Drake v. Drake, 134 N.Y. 220, 225;Murray v. Bronson, 1 Dem. (N.Y.) Surr. Rep. 217. * * * In view of the support given by the cases above cited to the view that the language used by testator clearly imports an intention upon his part to use the word `issue' with a restricted meaning equivalent to the word `children,' I am compelled to hold that the grandchildren of John take nothing."
2 Simes on Future Interests § 414, says: "The cases are substantially unanimous in holding that in the absence of peculiar circumstances or a peculiar context in the instrument in which the word appears, `children' means immediate offspring, and does not include grandchildren or more remote issue."
In Dunn v. Corey, 56 N.J. Eq. 507, the court discusses, at great length, the sense in which the words "child," "children" and "grandchildren" are used, it says, inter alia (at p.510): *Page 419 
"It is but a truism to say that the word `child' does not ordinarily include grandchildren * * *.
"In most of the cases in which judges have held that the word `child' cannot be construed to mean `grandchildren,' an exception has been noted as possible to arise out of the necessity of the case. It is thus stated by Chancellor Green in Brokaw v.Peterson, 2 McCart. 194 (at p. 198): `The word children does not, ordinarily and properly speaking, comprehend grandchildren or issue generally. Their being included in that term is only permitted in two cases, namely, from necessity, which occurs when the will would remain inoperative unless the sense of the word children were extended beyond its natural import, and where the testator has clearly shown by other words that he did not intend to use the term children in its proper, actual meaning, but in a more extensive sense.'
"And the same thought is expressed by Chancellor Runyon inFeit's Executors v. Vanatta, 6 C.E. Gr. 84 (at p. 85), where he says: `The settled rule in the construction of wills is that it [the word "children"] will not be construed to include grandchildren unless there is something in the context to show that the testator intended that it should include grandchildren, or unless the provision will be inoperative without such construction.'"
Steward v. Knight, 62 N.J. Eq. 232; Farmers Trust Co. v.Borden, 83 N.J. Eq. 222; 104 A.L.R. 297.
"Thus, as a general rule, children as used in such connection does not include grandchildren." 69 Corp. Jur. 180.
In McGlensey's Estate, 37 Pa. Super. 514, the court states: "It is practically the universal rule for parents to mention their own children when they speak of children, and it is just as common for them to use the word `grandchildren' in speaking of the children of their own children." Willis v. Jenkins,30 Ga. 167. In Redmond v. Gummere, 94 N.J. Eq. 216, the court said (at p. 218): "The word `children' in a will does not ordinarily mean anything other than its natural and usual meaning in every day language." Forshee v. Dowdney, 101 N.J. Eq. 446. *Page 420 
It is quite evident that the testator did not have in mind grandchildren, or remote descendants, when he used the word "children" in that part of the thirteenth paragraph of his will which reads as follows:
"In case either of my daughters or son shall die before me, leaving issue me surviving, the share herein devised in trust for the use of such daughter or son, I give and devise to such issue, and if any of the children of such daughter or son shall be under age at the time of my decease, the share coming to each of such children shall be payable upon his or her arriving at that age, and in case of his or her death under that age, his or her share shall go to his or her issue * * *."
The power of appointment given to George A. Helme (II) is an exclusive power, limited to his issue who survived him. It extends only to his children, or to the issue of a deceased child. He had no grandchildren of a deceased child. He had but three children, Margaret H. Marston, James B. Helme, and George W. Helme (III), aforesaid, and they survived him. These three, also, have children, who are, of course, the grandchildren of George A. Helme (II). The grandfather could not exercise the conferred power of limitations and appointment in favor of any of those grandchildren, since they are the issue of his children who were living at the time of his death.
There is no doubt in my mind that the use of the word "issue" by George W. Helme (I) in the eleventh clause of his will, was intended to embrace his immediate children only and that it was used with the same intent and meaning, and to the same effect, as though he, the testator, had used the words "child or children, or the issue of a deceased child or children." I find support for that conclusion in the provisions of the thirteenth paragraph of his will, wherein he used the words "child or children or the issue of a deceased child or children * * * equally perstirpes." In that paragraph the testator used the words "issue" and "children" interchangeably. And where those words are used interchangeably, the courts interpret the word "issue" to mean "children." Dennis v. Dennis, supra; Sibley v. Perry *Page 421 
(1802), 7 Ves. Jr. 522; 32 Eng. Reprint 211; Palmer v. Horn,84 N.Y. 516. In 2 A.L.R. 943, is the following:
"Where the word `issue' is used in other parts of the will as meaning `children,' it will be presumed to have been used in that sense in a connection in which its use is ambiguous. Foster v.Wybrants (1876), Ir. Rep. 11 Eq. 40; Silsbee v. Silsbee
(1912), 211 Mass. 105; 97 N.E. Rep. 758; Dennis v. Dennis
(1916), 86 N.J. Eq. 423; 99 Atl. Rep. 889; Duckett's Estate
(1906), 214 Pa. 362; 63 Atl. Rep. 830. Thus, where, in the first part of a will, the word `issue' is used equivocally, and there is nothing in the immediate context to fix its meaning, and in another part of the will the word is used in such a way as to show that the testator considered the expression as equivalent to the word `children' it must be assumed that he applied it in that sense in every part of his will."
Counsel for the infants contends and argues that the word "issue" as used by George W. Helme (I) in the eleventh paragraph of his will has an unrestricted meaning which includes the children of George W. Helme (III). Has it such meaning? Do the facts and the law bear him out? In my opinion they do not.
In In re Parks Will (decided March 16th, 1936),286 N.Y.S. 798, the court, considering the word "issue" said (at p. 800):
"It is settled that under a gift to issue, when the word is used without any terms in the context to qualify its meaning, the children of the testator and the issue of such children, although the parent is living, as well as deceased children, take percapita, and not per stirpes. This is where the word `issue' is used in its legal sense. Petry v. Petry, 186 App. Div. 738;175 N.Y.S. 30; affirmed, Petry v. Langan, 227 N.Y. 621;125 N.E. Rep. 924. It is only when there are doubts that the word `issue' is used in another than its legal sense, does not comprehend all persons in the line of descent from the ancestor, and has not the same meaning as `descendants,' that the presumption is overcome. Soper et al. v. Brown, 136 N.Y. 244;32 N.E. Rep. 768; 32 Am. St. Rep. 731; In re Durant's Will,231 N.Y. 41; 131 N.E. *Page 422 Rep. 562. This rule of law yields to a very faint glimpse of a different intention. New York Life Insurance Co. v. Winthrop,237 N.Y. 93, 105; 142 N.E. Rep. 431; 31 A.L.R. 791."
The grandchildren of George A. Helme (II), if he failed to exercise the power of appointment under the eleventh paragraph of the will of George W. Helme (I), could not take, because that paragraph provides that in the event of default of the power of limitations and appointment, the issue of George A. Helme (II) should take per stirpes. The term "per stirpes" means "by or according to stock or root; by right of representation; a term of the civil law, extensively used in the modern English and American law, to denote that mode of the distribution and descent of intestates' estates, where the parties entitled to take the shares which their stocks [such as a father] if living, would have taken." 48 Corp. Jur. 808.
When George W. Helme (I) died, the remainder over was contingent; the persons who eventually would take were not then ascertained. It was not known what children would be in esse at the time of the death of George A. Helme (II) or what grandchildren, if any, whose parents had predeceased George A. Helme (II).
"It is, of course, obvious that a remainder subject to a power is not necessarily vested; for if the remainder be limited to unascertained persons or on an express condition precedent other than the mere non-exercise of the power it would be contingent."1 Simes on Future Interests § 80.
In the instant case, the remainder given by George W. Helme (I) in default of limitation and appointment was to persons who could not be ascertained at the time of the death of George W. Helme (I). Certainly the grandchildren of George A. Helme (II), therefore, could not be said to have a vested interest. The remainder to them depended upon the contingency that their parents be dead, and that there was a default of the power of limitation and appointment by George A. Helme (II). McGill v.Trust Company of New Jersey, supra; affirmed, 96 N.J. Eq. 331. *Page 423 
"The remainder will be held contingent if it appears that the testator intended that the members of the class were to be ascertained at the termination of the particular estate or time of distribution and that no right was to vest in any except those of the class in existence at that time." 69 Corp. Jur. 639.
In Den v. Crawford, 8 N.J. Law *90, the court stated (atp. 96):
"They were contingent, for the one or the other was to vest according to events which could not be known until the decease of Fenwick; the first of them was to vest then, on this uncertain event, his death before his wife, and the second of them was to vest, on this other uncertain event, the death of his wife before him. They correspond with the description given in LeonardLovie's Case, 10 Coke 85 — `where it is doubtful and uncertain whether the use or estate limited in future will ever vest in estate or interest or not, there the use or estate is said to be in contingency, it may either vest or never vest as the contingency shall happen."
In Sadler v. Bergstrom, 113 N.J. Eq. 567, the court held that where a gift of a remainder interest is to a class whose members cannot be determined until the determination of the prior estate, there will ordinarily be no vesting of the prior estate until that occurs. See 23 R.C.L. 545, 546.
Counsel for the infants raises the point that George A. Helme (II) intended by the fourteenth paragraph of his will, as modified by paragraph first of the codicil dated May 14th, 1927, where he gave one-third to George W. Helme (III) for life with the remainder over "to issue if any him surviving," to incorporate in said paragraph "to issue if any me surviving;" and that the use of the word "him" in said phrase is a mistake, and that the phrase should read "to issue if any me surviving." (Italics mine.) I do not agree with counsel that such is the case. There is no justification for counsel's contention; to follow it, in effect, would be to rewrite the will of the testator. It is my thought, based upon consideration of all the facts in this case, that the scrivener of the will was, evidently, an able, careful and experienced draftsman in such matters. It is apparent that the testator *Page 424 
had in mind the weakness and inclination of his son, George W. (III); he deliberately weighed the consequences of an outright gift to him and fearing the effect of such, accordingly, provided for and created certain spendthrift trusts, as well as the life estate for him. His aim was to preserve the estate from dissipation at the hands of his not too strong "minded" son. I am not in accord with the reasoning and declaration of counsel for the infants, that George A. Helme (II), or his representative, copied the words "him surviving" (italics mine) from the will of his father, George W. Helme (I), and inadvertently incorporated them in his will; and I do not lean to the belief that the phrase was ill-considered, or is the result of mistake, either on the part of the testator, or the scrivener of the will. The full phrase is: "to pay over and deliver the principal of said fund to his issue, if any, him surviving, in equal shares,per stirpes and not per capita, and in default of issue of my said son, George, him surviving, then upon his death to pay over and deliver the principal of said fund to my other then surviving issue, in equal shares, per stirpes and not per capita."
Counsel for the guardians, in support of his contention that the phrase as it is worded expresses the deliberate intention of the testator, directs attention to the fact that the phrase under discussion appears ten times in the will and codicil of the testator, to wit, in paragraph "Fourteenth" subdivision (c) (1); paragraph "Fifteenth" subdivision (c) (1); paragraph "Sixteenth" subdivision (c) (1); paragraph "Eighteenth" subdivision (d) (1) and subdivision (3) (a); and in the codicil dated May 14th, 1927, in paragraph "First" subdivision (1); paragraph "Second" subdivision (1); paragraph "Third" subdivision (1); paragraph "Fourth" subdivision (1); and paragraph "Fifth" subdivision (1).
If the thought of counsel for the infants were carried through and his suggestion that a substitution be made in the phrase by incorporating the word "me" in the place of "him" (italics mine), it would absolutely void the intent of the testator. It would attribute to him an intention to discriminate against the after-born children of his son, George *Page 425 
W. Helme (III). I find no evidence of such thought in the mind of the testator. To effect the substitution would, in effect, cut off the children of George W. Helme (III) born after the death of their grandfather, George A. Helme (II). Such was not the intention of the testator. The construction urged by counsel for the infants, is entirely without warrant. I find no reason why the testator should make a distinction between his grandchildren who were living at the time of his death, and those who might be born thereafter. The point just discussed is not unlike the situation appearing in the case of In re Helme, supra, wherein the court, in considering paragraph six of the will of George W. Helme, held that the testator intended to include after-born grandchildren as well as those who were born at the time of his death.
In 69 Corp. Jur. 42, it is said:
"The court's function is to construe a will, not to make or rewrite one for the testator under the guise of construction, even to do equity or to accomplish a more equitable division of the estate, or for the purpose of making it more liberal and just, or even though interested parties are agreeable thereto."
And in the same volume of Corp. Jur. (at p. 80), it appears that:
"Where the testator's intention is manifest from the context of the will and surrounding circumstances, but is endangered and obscured by inapt and inaccurate modes of expression, the court, to effectuate the intention, may change or mold the language, or, as has also been held, may restrict it in its application. The rule, however, applies only where the testator's intention is clearly apparent and the change is necessary to effectuate the intention, and only when from the context of the will and the surrounding circumstances it is made clear beyond reasonable doubt that the testator omitted the word or words supplied by the court, or used words in a wrong connection. Where the language of the will is plain and unambiguous, the court cannot change it or give it a different and unwarranted meaning merely for the purpose of carrying into effect a conjecture or hypothesis of the testator's intention, nor may it in such case rewrite or mutilate the will to satisfy a mere expression of testamentary desire, or validate a void provision."
Wills v. Wills, 72 N.J. Eq. 782; affirmed, 73 N.J. Eq. 733;Coffin v. Watson, 78 N.J. Eq. 307; affirmed, 79 N.J. Eq. 643;American National Bank of Camden v. Morgenweck, *Page 426 114 N.J. Eq. 286; affirmed, 118 N.J. Eq. 269; Vrooman v.Virgil, 81 N.J. Eq. 301; Ely v. Ely's Executors, 20 N.J. Eq. 43; Higgins v. Mispeth, 118 N.J. Eq. 575.
Counsel for the infants, in further support of his contention for a substitution of words in the phrase under consideration, calls attention to be testator's action in deleting from the codicil of May 14th, 1927, the words "living at the time of his death," stating the testator thereby indicated a desire to correct the alleged erroneous reference to the issue living at the time of the death of George W. Helme (III), and confine it to the issue living at the time of the death of George A. Helme (II). The will and codicil show that the words "living at the time of his death" were properly deleted in order to make sense. In the original will of George A. Helme (II) in subdivision (1), paragraphs "Fourteenth" and "Fifteenth," the testator, after giving a life estate to George W. Helme (III), provided that after the death of George W. Helme (III), the principal should be paid to his issue if any him surviving per stirpes and not percapita. Subdivisions (c) (3) of paragraphs "Fourteenth" and "Fifteenth" state that in the event the remainder over to George W. Helme (III) is determined to be invalid, that such remainder should go to Margaret H. Marston and James B. Helme with the expressed request that they should deliver same to the issue of his son, George W. Helme (III) "living at the time of his death."
It is obvious that the children of George W. Helme (III) could have taken under paragraphs "Fourteenth" and "Fifteenth" of the original will of George A. Helme (II) only after the death of George W. Helme (III). Such was changed, however, by the codicil of May 14th, 1927, wherein the testator, George A. Helme (II), provided that the children of George W. Helme (III) should be entitled to the estate in the event their father, George W. Helme (III), should assign or encumber the property or in the event of his insolvency. He also modified subdivisions (2) of paragraphs "Fourteenth" and "Fifteenth" providing for trust estates for the children of George W. Helme (III) in the event said George W. Helme (III) predeceased him. *Page 427 
Subdivisions (3) of paragraphs "Fourteenth" and "Fifteenth" were modified by the codicil to conform with the new provisions whereby, in the event the provisions as to payment of either the income or the principal to the issue of George W. Helme (III) should be adjudged invalid, such income and principal should be turned over by the trustees to James B. Helme and Margaret Marston and by them forthwith delivered to the issue of George W. Helme (III) in equal shares per stirpes and not per capita.
It is apparent that the words "living at the time of his death" would have no application in the event that the trust created under subdivision (1) of the codicil, under which the children of George W. Helme (III) might become entitled to the income by reason of the spendthrift provisions for their father, George W. Helme (III), if still living. The codicil of George A. Helme (II) warrants the inference that the testator George A. Helme (II) wanted the life estate he gave his son, George W. Helme (III), to stand and he, evidently, had no doubt of its validity; but, however, he was not quite certain about the remainder over after such life estate; and, consequently, he incorporated the provision expressed in subdivision (3) of paragraphs "Fourteenth" and "Fifteenth" of his will as modified by the codicil thereto of May 14th, 1927, as a substitution and replacement in the event of an adjudication of invalidity. In the event of a declaration of invalidity in the instance just referred to, the testator did not want to see the life estate of his son, George W. Helme (III) defeated; and in the event of a decision that to turn the remainder over might be invalid, he provided that in such event, the remainder should go to the trustees after the death of the said George W. Helme (III) with a request that they should then forthwith deliver it to the issue of George W. Helme (III).
I am convinced that the testator, George A. Helme (II), in attempting to exercise the power bestowed upon him under the will of his father, George W. Helme (I), by giving the remainder over to the issue of George W. Helme (III) if any him surviving, clearly exceeded the power of limitations and appointment under the eleventh paragraph of his father's *Page 428 
will which expressly limited him to appoint only to issue surviving him. Camden Safe Deposit and Trust Co. v. Scott,121 N.J. Eq. 366.
The thirteenth paragraph of the will of George W. Helme (I) creating a trust fund whereby each one of his three children received a one-third interest in the income for life, and upon the death of each of his children to their children or the issue of their deceased children in fee "or to such of them
(italics mine) and in such estates, shares and proportions as my daughters or son so dying shall by last will and testament direct, limit and appoint," gave George A. Helme (II) an exclusive power of appointment. However, this power to appoint did not extend beyond his children; and by extending it beyond them, in the endeavor to appoint to his grandchildren, the children of his son, George W. Helme (III), who are the great-grandchildren of the donor, he patently exceeded his power of appointment. In the case of Camden Safe and Deposit and TrustCo. v. Scott, supra (which is the last "word" of the court of errors and appeals on the subject here involved), the testator whose will was under consideration said: "6:D. And in case of the death of any one of my grandsons before attaining the age of thirty years and in case of the death of my granddaughters, I direct that my Trustee shall distribute the trust fund of the grandchild so dying in such manner as said grandchild shall by will direct but in default of such instructions then I direct that the said deceased grandchild's share shall be distributed equally between the remaining brothers and sisters of the grandchild so dying, or in case of no brothers or sisters, then I direct it shall be distributed equally between all of my surviving grandchildren." Referring to this quotation, Mr. Justice Perskie, speaking for the court of errors and appeals, said:
"A study of the quoted clause, when considered in connection with the other provisions of paragraph six, makes it readily apparent that the power of appointment by will or the direction for the distribution of a grandchild's shares, upon his death, to and among his brothers and sisters, if any, or to the other grandchildren of the testator, are in flat contravention of the rule. Such appointment or distribution *Page 429 
may take effect after lives in being and twenty-one years thereafter. It is entirely conceivable that a grandson may die when twenty-eight or twenty-nine years of age. If, at his death the power of appointment by will were permitted, the vesting of the interest in his appointee would be too remote. Likewise, if a granddaughter be authorized to make a will disposing of her share [she was given only a life estate] she may live the normal expectancy of life, or perhaps longer, and then execute a will pursuant to the power granted. Such appointment would, afortiori, be subject to the vice sought to be avoided by the rule." (The decision in this case was announced February 10th, 1937.)
Counsel for the infants urges that the words "child" or "children" in the paragraph now under consideration, mean the same as the word "issue" and include the descendants to the remotest degree and not to descendants to the first degree. An examination of the thirteenth paragraph and the use there given to the word "child" or "children" does not sustain counsel's argument. The conclusions of fact, and the application of the law arising thereon, reached in the construction of paragraph eleventh, aforesaid, clearly fit in with the situation confronting us under paragraph thirteenth and they furnish the answers to complainants' requests for constructions and instructions.
The power conferred in paragraph thirteenth is confined to a particular class. The donee was there vested with power to appoint, limit or exclude any of his children; he had no power to appoint without the class mentioned in that paragraph, i.e., beyond his own children. 69 Corp. Jur. 842, says:
"Where, however, the power is to appoint or distribute property among `any of' designated persons, or the members of a designated class, or `such of' them as the donee may wish or direct, or to a named or designated person `or' another likewise named or designated, it is an exclusive one, and may be exercised by appointing to such one or more of the designated persons, or the members of the designated class, as the donee may choose, to the exclusion of another or others, it not being necessary that shares or portions of the property be given to all, except where a contrary intention appears in the will." *Page 430 
And (at p. 843):
"* * * where the power is to appoint to designated persons, or members of a designated class, no appointment is valid, by way of remainder or otherwise, to others than the persons so designated, or to non-members of such class, or which gives the appointee power to appoint the remainder outside of the designated objects of the power, or the designated class."
In Daniel v. Brown, 156 Va. 563; 159 S.E. Rep. 209;75 A.L.R. 1377, the court said:
"But the property here did not belong to Jane C. Jackson; she was given a specific power to transfer this property in a specific manner, i.e., by will, to a certain class, i.e., the nieces and nephews of her husband. The two wills must be construed together. The sole authority that Jane C. Jackson had to dispose of this property was derived from the third clause of her husband's will, wherein she was expressly authorized to leave it to `such of my nieces and nephews * * * as she may choose.' A stream can rise no higher than its source, and the source of the authority here denies to Jane C. Jackson the power to leave this property to anyone except the nieces and nephews of her husband. Clearly, Joseph S. Jackson [the testator] provided a different disposition than to leave his property to the issue of his nieces and nephews; by the very requirement of his will grandnieces and grandnephews were eliminated."
White v. Graves, 104 Atl. Rep. 205; Lippincott v. Ridgway,supra. In exercising the power of appointment given to him in paragraph thirteenth of his father's will, George A. Helme (II) used the same language as he employed when he exercised the power of appointment given to him in paragraph eleventh of his father's will; and the use of the words "to issue if any him surviving" was the consequence of thought — deliberate and considered thought.
Since the measurement of the time when the rule against perpetuities operates begins with the date of the donor of the power, as hereinabove indicated, the purported exercise by the testator, George A. Helme (II), of the power given him under paragraph thirteenth of his father's will, clearly offends the rule. In re Helme, supra; Graves v. Graves, supra; In re *Page 431 Smisson, supra; McGill v. Trust Company of New Jersey, supra;Kates v. Walker, supra; Camden Safe Deposit and Trust Co. v.Guerin, supra; Hewitt v. Green, supra; Stout v. Stout,supra.
George A. Helme (II) apprehending that he may have violated the rule against perpetuities, provided in paragraph first, subdivision (3) and paragraph second, subdivision (3) of the codicil to his will, that in the event of a declaration vitiating the appointments, the remainder "shall be paid over and delivered to my said daughter, Margaret H. Marston, and to my son, James B. Helme, or to the survivor of them instead of to such issue of my said son, George, with the request on my part hereby expressed that the same shall be forthwith delivered and paid over by themor the survivor of them to such issue, if any, of my said son,George, in equal shares per stirpes and not per capita."
(Italics mine.) This last quotation, in effect, creates a trust.Van Duyne v. Van Duyne, 15 N.J. Eq. 503; Eddy's Executor v.Hartshorne, 34 N.J. Eq. 419; Wood v. Camden Safe Deposit andTrust Co., 44 N.J. Eq. 460; Eberhardt v. Perolin, 48 N.J. Eq. 592
(reversed on appeal but soundness of rule not questioned),49 N.J. Eq. 570; Cox v. Wills, 49 N.J. Eq. 130 (reversed as to method of accounting), 49 N.J. Eq. 573.
In Eddy v. Hartshorne, supra, the court said:
"The rule of the English chancery is, that when, by will, property is given absolutely to a person, and the same person is, by the giver, `recommended,' `entreated,' `requested' or `wished' to dispose of that property in favor of another, the recommendation, request or wish is held to be imperative, and to create a trust, if the subject and objects are certain. That rule is recognized and established here."
It is evident that George A. Helme (II), determined that if the remainder over to the children of George W. Helme (III), would be declared invalid, that, then, they should get it in another way. The course he pursued will not attain the desired end. His attempt to create a trust by exercise of the power of appointment given to him by his father, George W. Helme (I), cannot stand. The creation and purpose of such a trust is but nothing less than an attempted *Page 432 
exercise of the power of appointment by a circuitous route. The validity of that trust must be measured from the date of the death of George W. Helme (I), the donor of the power. Since it is so calculated, George A. Helme (II) was without power to form such trust for the benefit of his grandchildren to vest in them the estate at the death of George W. Helme (III). Hewitt v.Green, supra.
Counsel for the infants suggests that, in the event of the exercise of the power of appointment by George A. Helme (II) with the remainder over to the issue of George W. Helme (III), being declared invalid, then the alleged precatory trust created in the alternative, by which the remainder goes to Margaret H. Marston, and James B. Helme, which they are requested to forthwith deliver and pay over to the issue of George W. Helme (III) in equal shares per stirpes, should stand. Just let us attempt to visualize the consequence of the adoption of such alternative. It is to be noted that Margaret H. Marston and James B. Helme have declared in writing that upon receipt of such remainder they will carry out the wishes of their father, George A. Helme (II), and forthwith deliver the remainder to the issue of George W. Helme (III).
If such trust were declared to be valid, the children of George W. Helme (III) would not receive the remainder over until the death of their father, he having a life estate in such remainder. In the meantime, many things could happen, which could materially affect the rights or interests of the infants. Margaret H. Marston and James B. Helme might predecease George W. Helme (III). What then would be the position of the trustees' children? And might not the rights of the infants be jeopardized? The status of the infants would be doubtful and somewhat precarious. The fact that Margaret H. Marston and James B. Helme have, or have not, executed in writing a paper expressing their willingness to be bound by the wishes of their father, is without legal or equitable significance. The execution now of such a writing may be indicative of their good intentions, but I cannot conceive how it can be equitably considered in these proceedings. *Page 433 
Counsel for the infants says that under the alternative clause, it would be the issue that survived George A. Helme (II) and not the issue that might survive George W. Helme (III) that would take. However, I am convinced that George A. Helme (II) did not intend by the alternative clauses to defeat the life estate that he gave his son, George W. Helme (III). I am satisfied he wanted that arrangement to stand, if possible. The appointees under the alternative clauses are the same as those named in the original appointments by George A. Helme (II), viz., those that might survive George W. Helme (III). I agree with the views of counsel for the guardians, that the trust created under the alternative clauses would have been good had they applied to the property of George A. Helme (II). Hewitt v. Green, supra; Graham v.Whitridge, supra; In re Friday, supra.
In view of the foregoing conclusions, what becomes of the property which was the subject of the power of appointment? Since it is decided that as to the remainder over, George A. Helme (II) died without having lawfully exercised the power of limitations and appointment conferred upon him by his father's will, his children, therefore, are entitled to share equally under and by virtue of paragraphs eleventh and thirteenth of the will of their grandfather, George W. Helme (I). I am convinced that the invalid part is so interwoven and connected with that part of the valid plan of George A. Helme's will that it must result in a failure of those appointments. McGill v. Trust Company of New Jersey,supra; Hewitt v. Green, supra; Graves v. Graves, supra. In21 R.C.L. 320, the following rule appears:
"When a part only of a gift is invalid by reason of the rule against perpetuities and the invalid limitation is an essential part of the general scheme of the will or gift, the several parts of the devise or the grant are treated as inseparable and the whole is adjudged void * * *. But if a part of the testator's general scheme is that an estate shall be kept entire for an unlawful period, no part of the scheme can be sustained, and the estate to which the void provisions relate vests immediately in the heir." (And cases cited.) *Page 434 
In Benedict v. Webb, 98 N.Y. 460, where the application of the above rule was considered the court said (at p. 466):
"We should feel disposed to sustain the trusts in favor of the other children except for the reason that to uphold those, while setting aside the trust in favor of Anna Augusta, would seriously interfere with the intention of the testator, that all the children and their issue should share equally in his estate, and would produce great injustice. The result of sustaining trusts in favor of the other children would be that each would take one-fourth share of the estate, and also as heirs and distributees an equal share with Anna Augusta, in the share intended for her. No case, we think, can be found which would justify upholding a part of a will, when by so doing it would produce such manifest injustice. * * * We are of opinion therefore that the trust attempted to be created by the testator in the two-thirds part of the estate cannot be sustained * * *."
In re Finck's Estate, 171 N.Y.S. 573; Clemens v. Clemens, 60Barb. (N.Y.) 366. In the case of In re Whitney's Estate,176 Cal. 12; 167 Pac. Rep. 399, where the court held that the effect of an invalid part of a will was to invalidate the apparently valid clauses, it said (at p. 402):
"Nothing can be clearer than the proposition that the testator did not intend that his widow, or either of the other children, should have any part of the share so set apart to one child except in the contingency he provided for, that is the death of one of his children without issue. To do this would destroy a very material part of the plan of the testator for the disposition of his estate, and would produce a result which he did not contemplate and to which it cannot be supposed that he did consent or would have consented. * * *
"The question whether the valid clauses can stand depends upon whether or not the invalid ones are so interwoven with them that they cannot be eliminated without interfering with and changing the main scheme of the testator. In Darling v. Rogers, 22Wend. (N.Y.) 495, Senator Ver Planck correctly stated the rule as follows: `Where a will is good in part and bad in part, the part otherwise valid is void if it works such a distribution of the estate as, from the whole *Page 435 
testament taken together, was evidently never the design of the testator. Otherwise when a good part is so far independent that it would have stood had the testator been aware of the invalidity of the rest." Reed v. McIlvain, 113 Md. 140; 77 Atl. Rep. 329;Myers v. Safe Deposit and Trust Co., 73 Md. 413;21 Atl. Rep. 58; In re Christie, 133 N.Y. 473; In re Drury's Will,226 N.Y.S. 712.
Therefore, under paragraphs eleventh and thirteenth of the will of George W. Helme (I), Margaret H. Marston is entitled to a one-third portion of such estates; James B. Helme is entitled to a one-third portion of such estates, and George W. Helme (III) is entitled to a one-third portion of such estates. I shall advise an order instructing the complainants in accordance with the conclusions herein announced. *Page 436